## Case No. 15,494.

UNITED STATES v. JONES.

[3 Wash. C. C. 209.] [1]

Circuit Court, D Pennsylvania. April Term, 1813.

PIRACY—STATUTORY CRIMES—UNLAWFUL ACTS OF PRIVATEERS — NAVAL REGULATIONS — PROOF OF OWNERSHIP OF VESSEL—IMPEACHING WITNESS.

1. The defendant, who was the first lieutenant of an American privateer, the Revenge, was indicted for piracy committed upon a Portuguese vessel, and for assaulting the Portuguese captain and the crew, and putting them in bodily fear, &c. The defendant was charged with boarding the vessel, and by force and intimidation, taking from her money and other articles, not claiming the vessel as prize, but pretending that the Revenge was an English vessel, and that the articles would be paid for, by an order on the English consul. The 8th section of the act of congress, makes murder and robbery on the high seas, acts of piracy. The words "which, if committed in the body of a county," do not relate to "murder" and "robbery," but to the words immediately preceding them, "or any other offence."
[Cited in Spart v. U. S., 156 U. S. 167, 15 Sup. Ct. 318.]

2. To define the meaning of the term "robbery," the common law must be resorted to. Whenever a statute of the United States uses a technical term, which is known, and its meaning clearly ascertained by the common or civil law, from one or other of which it is obviously borrowed. it is proper to refer to the source from which it is taken, for its meaning.
[Cited in Re Ezeta. 62 Fed. 992.]
[Cited in Bedell v. Janney, 4 Gilman, 205.]

3. The act of congress of 26th June, 1812 [2 Stat. 759], does not repeal the provisions of the law relating to piracy.

4. Robbery is the felonious taking of goods from the person of another, or, in his presence, by violence, or by putting him in fear, and against his will.
[Cited in Hill v. State (Neb.) 60 N. W. 923; State v. Gorham, 55 N. H. 166.]

5. The general rule of law, that robbery on the high seas is piracy, has no exception or qualification in favour of commissioned privateers, in any act of congress. in the common law, or in the law of nations.
[Cited in Davison v. Sealskins, Case No. 3,-661.]
[Cited in Dole v. Merchants' Mutual Marine Ins. Co., 51 Me. 469.]

6. The law for the better government of the navy, which enjoins on inferior officers and privates. the duty of obedience to their superiors, speaks of the lawful orders of the superiors.

7. If many go to do an unlawful act. and one only do it, all are principals. But, if they go to do a lawful act, as to visit a vessel to ascertain her character, and all but one commit a felony, though in his presence. but without his participation. their crime is not imputable to him.
[Cited in brief in Spies v. People, 122 Ill. 90, 12 N. E. 908, and 17 N. E. 898.]

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

8. Although the usual evidences of property in a vessel, are the register and bill of sale, if there be such papers, and in the cargo, the invoice, bills of lading, &c., yet, that other evidence may be admitted.

[Cited in U. S. v. Peterson, Case No. 16,037.]

9. A party cannot discredit his own witness, by proving, that on a former occasion, he swore differently from what he has now sworn.

[Cited in Harris v. Berry, Case No. 6,115.]

10. Quere, whether, under some circumstances, there be an exception to this rule.

The prisoner [John H. Jones] was indicted for feloniously and piratically entering a certain Portuguese brig (by name,) and assaulting the captain, &c., putting them in bodily fear, and feloniously, &c., stealing, &c., out of said brig, and from the possession of said captain and mariners, certain enumerated articles. It appeared in evidence, on the part of the prosecution, that the defendant was the first lieutenant of a privateer schooner, called the Revenge, William Butler master, duly commissioned by the president of the United States, on the 12th of October, 1812. It was proved by the captain, and a third lieutenant of the Portuguese brig, called the Triumph of Mars, that he sailed in the said brig from Lisbon, on the 16th of September last, bound to New-York; the vessel, and cargo on board, belonging to a Portuguese subject, residing at Lisbon. That on the 2d of November, she was chased and brought to by this privateer. That the prisoner, with four seamen, boarded her and called for her papers, which were exhibited, and examined by the prisoner. They were the royal register, the certificate of the American consul at Lisbon, the invoices and bills of lading. The prisoner then loaded his pistols, presented one of them to the breast of the captain, and informed him that he was a prisoner. The captain was then ordered to open his trunks, and those of his officers, from which, and from the locker of the vessel, he took out fifty dollars belonging to one of the officers; seventy-five half joes belonging to the owners for the use of the vessel; one hundred and eighty dollars belonging to the captain; and eighty-four dollars belonging to one of the officers and a seaman. A general plunder then commenced; and a quantity of sugar, cabin furniture, the clothes of the people, rigging, and a variety of other articles, were seized and carried off to the privateer, the prisoner being present the whole time, and directing what was done. All this was done in the presence of the captain and officers of the brig, who supposed the privateer to be French, although, during the whole transaction, she had English colours flying. The witnesses were positive as to the identity of the prisoner. No seizure of the vessel, as prize, was made or intimated; but on the contrary, the prisoner said that he would send an order to the English consul, to pay for the articles taken. This was said after the articles were taken, and in answer to the

captain's complaint, that he should be so treated by an English privateer. After the last boat load of the plunder was carried away, the captain of the Portuguese brig was ordered, as soon as the privateer should fire a gun, to hoist sail and pursue his voyage. This was done, as soon as the prisoner got to the privateer; and the brig proceeded to New-York, where she arrived on the 16th of December.

The defendant's counsel objected to any evidence being given of the property in the brig and cargo, but the written documents, such as the register, or bill of sale, invoices and the like.

WASHINGTON, Circuit Justice. The usual evidence of property in a vessel is, the registry and bill of sale, if there be such papers; and of the cargo, the invoice, bill of lading, bill of sales, &c. But this is not the only evidence, nor is it always the best. It does not appear, that there was any registry or bill of sale of this vessel; and although there were invoices, and a bill of lading of the cargo, yet, other evidence of property may be given; such as acts of ownership and the like. The Portuguese captain proves, that this vessel and cargo belonged to a Portuguese subject, who put the cargo on board, and employed him and the crew to navigate the vessel. This is sufficient.

On the part of the prisoner, it was proved by four witnesses, two of whom, viz. Le Brun and Whitford, were called and examined in support of the prosecution, that the prisoner boarded the brig by order of Captain Butler, for the purpose of inquiry and examination. That the prisoner treated the Portuguese captain with great politeness; forbade one of his men from even receiving, as a present, a small quantity of sugar from one of the Portuguese crew, and threatened to put to death any of his men, who should take away the smallest article from the brig, without the orders of his captain. That after examining the papers of the brig, and remaining in the brig about half an hour, he returned in the boat to the privateer; and after having made his report to Captain Butler, and complaining of being unwell from not having eaten his breakfast, or being intoxicated, as some of the witnesses supposed, he laid himself down on the deck and slept, or seemed to do so, until after the vessels separated. These witnesses deposed, that the prisoner brought nothing with him from the brig, that they saw or knew of. It was proved, however, that after Jones returned from the brig, and had lain down, Captain Butler ordered his boat to return to the brig, and to bring from her whatever the crew wanted. That a man of the name of Hancock, about the size of the prisoner, very much resembling him in size and countenance, and dressed precisely as the Portuguese witnesses described the prisoner to have been, went in the boat, and returned

with a considerable sum of money in his bosom and pockets. That the articles proved to have been taken away by the Portuguese witnesses, were brought to the privateer by Hancock and others of the privateer's crew, in the different trips made to and from the brig; and amongst other articles, two bags of sugar, which were divided amongst the crew. The dress of the prisoner, when he boarded and returned from the brig, was proved to be totally different from that described by the Portuguese witnesses.

The points of law raised by the counsel for the prisoner were: (1) That robbery on the high seas, is not piracy by the laws of the United States, not being punishable with death by such laws; and the 8th section of the law for the punishment of crimes, which defines piracy, declares those offences committed at sea, to amount to felony and piracy, which, if committed on land, would be punished with death. If the offence is not defined and made punishable by some act of congress, neither the law of nations nor the common law can be resorted to—and that it is not defined in this law. (2) That if robbery on the high seas amounts to felony and piracy under the 8th section of the above law, it is virtually repealed by subsequent laws in relation to persons acting under a commission of marque and reprisal—those laws having declared a milder punishment, and a particular mode of trial. 1 Leach, 306. The act of the 26th June, 1812, declares, that all offences committed on board of letters-of-marque, by any officer or seaman, shall be tried and punished in like manner as if committed on board of a public armed vessel; and the trial and punishment are prescribed by the act for the government of the navy. (3) Robbery cannot be committed, unless the taking be from the person of the owner—which is not proved in this case, even by the witnesses for the prosecution. (4) Piracy cannot be committed by a person acting under a commission. Bynck. (Duponceau's Ed.) 127, 135; 2 Azuni, Mar. Law. 351. If piracy could be committed by one acting under a commission from the United States, the 9th section of the act would have been unnecessary. (5) The prisoner was an inferior officer, and was bound to obey the orders of Captain Butler; of course, he cannot be punished for having done so.

Dallas, for the prosecution, insisted, that robbery on the high seas is declared by the act of congress to be felony and piracy, and that the definition of robbery is to be sought in the common law;—that it amounts to piracy, both by the law of nations and the common law of England, though committed by persons acting under a letter-of-marque, if it be done feloniously, as in this case, 2 Wood. Lect. 422; 1 Leoline, Jenk. 94; 2 Leoline, Jenk. 714; 5 State Tr. 313, 314; Moll. b. 1. c. 2. § 23; 1 Hawk. P. C. 267, 270; 4 Bl. Comm. 171, 173; 8 State Tr. 73.

WASHINGTON, Circuit Justice (charging jury). Although this case will probably be decided upon the evidence, it is of great importance that the questions of law which have been raised, in the able discussion which the case has received, should be settled—in order that the commanders of our public armed vessels, and more particularly those belonging to commissioned privateers, may know how far their commissions authorize them to go, in relation to neutral vessels which they may meet with at sea. The offence charged in this indictment, is piracy, by a robbery, committed upon the property of a neutral, met with on the high seas. Before a definition of robbery is attempted, it will be proper to dispose of some preliminary objections, intended to show that robbery on the high seas is not an offence punishable as piracy, by the laws of the United States. It is said, that the defendant is not indicted for piracy, under the law of nations;—that in the courts of the United States, no indictment at common law will lie; and that there is no statute of the United States, which makes this an offence. It is true, that the defendant is not indicted for an offence against the law of nations, or the common law; and that, unless the offence charged in this indictment be made punishable by some law of the United States, the prisoner must be acquitted. But nothing can be more clear, than that robbery on the high seas is declared to be felony and piracy, by the 8th section of the act "for the punishment of certain crimes."

We understand the argument to be, that as robbery on land is not declared by any act of congress to be a capital offense, it is not declared by this section to be piracy, if committed on the high seas. This is by no means the correct construction of the law. Murder and robbery, committed on the high seas, are declared to amount to piracy; and also, any other offence, which would be punishable with death, had it been committed on land. It is clear, that the words "which if committed within the body of a county," &c. relate not to "murder or robbery," but to the words immediately preceding, "or any other offence." All that remains, then, under this section, is to ascertain the meaning of the word "robbery"; and it is admitted that the common law definition of the term may be resorted to. If a statute of the United States uses a technical term, which is known, and its meaning fully ascertained by the common or civil law, from one or the other of which it is obviously borrowed, no doubt can exist that it is necessary to refer to the source whence it is taken, for its precise meaning.

2. It is objected, that although robbery on the high seas should be piracy under this statute of the United States, still it is repealed by subsequent laws, which subject the offender to a slighter punishment, and a different mode of trial. The answer to this is,

that the 8th and 9th sections of the law for the government of the navy, which inflicts such punishment upon those who shall take from a vessel captured at sea any part of her cargo, or embezzle the same, or who shall maltreat any of the persons, relates expressly to prizes, or to vessels seized as prize, and not to acts of piracy; and the act of June, 1812, respecting privateers, is confined to the conduct of persons on board of privateers, and is intended for their government. But for piratical acts committed on others, no punishment, or mode of trial by a court martial, is prescribed; and it would be strange if it were, when it is observed that this court martial is to be called upon the application of the captain of the privateer: for, suppose the captain and his crew should commit piracy, by robbery, or by running away with the vessel—he would be the last man to invite an inquiry by a court martial; and yet it is said, that for such an act, he cannot be tried by the proper civil tribunal of the United States. This cannot be the law.

3. Having disposed of these objections, it will be proper to give the definition of robbery, which is the felonious taking of goods from the person of another, or in his presence, by violence, or by putting him in fear, and against his will. It is objected, that the taking must be from the person. The law is otherwise; for if it be in the presence of the owner,—as if by intimidation he is compelled to open his desk, from which his money is taken, or to throw down his purse, which the robber picks up,—it is robbery; as much as if he has put his hand into the pocket of the owner, and taken money from thence. See 2 East, Cr. Law, 707; 1 Hale, P. C. 533; 1 Hawk. P. C. c. 34, § 5. But the taking must be in the presence of the owner. We have then got so far in the examination of this cause, as to have ascertained that the felonious taking of goods from the person of another, or in his presence, on the high seas, by violence, or by putting him in fear, and against his will, is felony and piracy by the law of the United States, and punishable with death.

4. But the taking must be felonious; and it is contended, in behalf of the prisoner, that spoliation of the property of a neutral, on the high seas by a commissioned cruiser, cannot be felonious, and consequently is not piracy;—that the commission is a complete shield to the persons acting under, though in contravention of it, against any species of taking, although the same would amount to robbery, at common law, if committed on land. The counsel on each side have directed their principal strength to this part of the case; and its novelty, as well as its importance, has merited the attention which has been bestowed upon the examination of it. But we ask, where do the counsel find this qualification of the general rule, that robbery on the high seas is piracy? Not in the 8th section of the act of congress constituting this offence. That section is general in its expressions, and applies to all persons whatsoever committing robbery on the high seas. Not in the law of nations—for many respectable writers on public law, are express upon the subject, that piracy may be committed by persons acting under a commission to cruise; and there is not a dictum of any writer to the contrary, to our recollection. Such is the clear opinion of Sir Leoline Jenkins, supported by Molloy, Woodeson, and by the decision given in Kyd's Case, 5 State Tr. 313, 314; which latter case, though decided at common law, is clearly bottomed upon the principles of the maritime law of nations, with which the common law in this respect agrees. This doctrine is not contradicted by Bynkershoek, who was relied upon by the prisoner's counsel, who merely says[2] that if a commissioned cruiser exceed his authority, he would not, on that account, hold him to be a pirate. Neither is he held to be a pirate, or contended in this argument, by any person, to be a pirate on that account. If such a cruiser capture a neutral vessel, he exceeds his authority; but if he takes her as prize, it is a marine trespass, but not an act of piracy. Yet if the taking be felonious, and with intent to commit a robbery, this writer does not say, that the act would not amount to piracy; and certainly it would be strange, if a commission to do a lawful act, sanctioned by the law of nations, could grant, by implication, impunity against a crime which that law views with abhorrence, and which all civilized nations unite in punishing with the greatest severity.

The counsel, who endeavour to maintain this qualification of the general law of piracy, would not, we presume, turn to the common law, in order to find it; and if they were to do so, they would equally be disappointed. Beside the positive decision against it in Kyd's Case, there is no analogy to the doctrine, to be met with in the common law. If an officer, having a warrant against a particular individual, to arrest his person, or to seize his property, should abuse the person of his prisoner or his property, or should take the property of some other person than of him against whom the writ was directed, he would be a trespasser: should he, under cover of such an authority, steal the property, it would be larceny. So, with respect to a commissioned cruiser. If he take the property of a neutral, he is a trespasser, and will be compelled, not only to make restitution, but compensation also, in damages, unless he had probable cause for seizing the property as good prize. And if he should

---

[2] The words of this learned writer are, "but whether one be a pirate or not, depends upon the fact, whether he has or not, a commission to cruise; and if it should be alleged, that he exceeded the authority which that commission gave him, I would not, on that account, hold him to be a pirate."

make the seizure, not as prize, but with a felonious intent to convert the property to his own use, without inquiry and trial, what reason can be given, why his commission should shield him from the charge of felony and piracy? In deciding in either case, whether the act amounts to trespass or felony, the quo animo is to be sought after, and is to be judged of by the actions of the party. If the doctrine, that a commissioned cruiser cannot commit an act of piracy, is not to be found in the 8th section of the act of congress, nor in the common law, or law of nations, does it receive any countenance in the provisions of the 9th section of the same act of congress? We understand the argument founded upon this section, to be this;—that if a commission granted to a cruiser by the United States, does not protect one of its citizens against a charge of piracy, committed upon a neutral and a foreigner, a commission granted by a foreign nation to one of our citizens, would not excuse a piratical or hostile act committed against another citizen, or against the United States. The 9th section, therefore, was altogether unnecessary, since, upon the doctrine that the commission in such case makes no difference, the offence described in the 9th section, would be punishable under the general expressions contained in the 8th section. But the legislature, by introducing the former section, has thereby intimated an opinion, that even a commission granted by a foreign nation, much more one granted by the United States, would not protect the cruiser against a charge of piracy, for robbery committed upon the high seas, unless the legislature should prescribe a different rule in relation to foreign commissions. Such we understand to be the argument. Let it be remarked, in the first place, that this mode of arriving at the legislative meaning of a law, is not always to be depended upon. The reason which induced the making of the provision, from which the inference is drawn, can only be guessed at. It may be made merely from abundant caution —from inattention to some general principle of law, or of some provision in former laws; or it may be copied from a law found in some other code, without attending to the particular reason, which had induced its adoption into that code. The 9th section of this law, is, in fact, copied from the statute of the 11 & 12 Wm. III., c. 7, the history of which statute is explained by Hawkins. It was aimed at commissions granted to cruisers, by James II., after his abdication; which, by many, were considered as conferring a legal authority to cruise, so as to protect those acting under them against a charge of piracy. Still, we admit, that unless some other reason can be assigned for the introduction of a similar provision into our law, the argument which has been founded upon it, would deserve serious consideration. We do not think it difficult, to assign a very satisfactory

reason for the adoption of this section, without viewing it in the light of a legislative construction of the 8th section, or of the general law.

If a citizen of the United States, should commit acts of depredation against any of the citizens of the United States, it might at least have been a question (see 2 Browne, Civil & Adm. Law 461), whether he could be guilty of piracy, if he acted under a foreign commission, and within the scope of his authority. He might say that he acted under a commission, and not having transgressed the authority derived under it, he could not be charged criminally. But the 9th section declares, that this shall be no plea; because the authority under which he acted is not allowed to be legitimate. It declares to the person contemplated by this section, that in cases where a commission from his own government would protect him from a charge of piracy, that is, where he acted within the scope of it, or even where he acted fairly, but under a mistake, in transgressing it, yet that a foreign commission should afford him no protection, even although he had not exceeded the authority which it professed to give him. But it by no means follows from this, that a citizen, committing depredations upon foreigners or citizens, not authorized by the commission granted by his own government, and with a felonious intention; should be protected by that commission against a charge of piracy. Another object of this section seems to have been, to declare that acts of hostility, committed by a citizen against the United States, upon the high seas, under pretence of a commission issued by a foreign government; though they might amount to treason, were nevertheless piracy, and to be tried as such.

5. The only remaining question of law which has been raised in this cause is, that the prisoner ought to be presumed to have acted under the orders of his superior officer, which it was his duty to obey. This doctrine, equally alarming and unfounded, underwent an examination, and was decided by this court in the Case of General Bright [Case No. 14,647.] It is repugnant to reason, and to the positive law of the land. No military or civil officer can command an inferior to violate the laws of his country; nor will such command excuse, much less justify the act. Can it be for a moment pretended, that the general of an army, or the commander of a ship of war, can order one of his men to commit murder or felony? Certainly not. In relation to the navy, let it be remarked, that the 14th section of the law, for the better government of that part of the public force, which enjoins on inferior officers or privates the duty of obedience to their superior; cautiously speaks of the lawful orders of that superior. Disobedience of an unlawful order, must not of course be punishable; and

a court martial would, in such a case, be bound to acquit the person tried upon a charge of disobedience. We do not mean to go further than to say, that the participation of the inferior officer, in an act which he knows, or ought to know, to be illegal, will not be excused by the order of his superior.

What remains for us to say, as it concerns the evidence only, will be short. The evidence of the two Portuguese witnesses, unless it should in your opinions be overbalanced by that given in favour of the prisoner, makes out fully the case stated in the indictment. The captain, officers, and crew, of a friendly vessel, were, by intimidation and against their will, forcibly despoiled of their property by the prisoner, taken in their presence and carried away; and all this was done with a felonious intent, if it is possible by the conduct and actions of men to develop their intentions;—that the prisoner did not act under a mistaken opinion, that the property belonged to enemies, is plain; because in that case, it would have been good prize, and the seizure would have been made as prize, and would, and ought to have been, sent in for adjudication. But no attempt of this sort was made. The spoliation was made under false colours; and the illegality of it was acknowledged by the prisoner, when he spoke of payment being made for the property, by the English consul, at Lisbon. It has not been pretended, that the privateer had not men enough to spare, for the purpose of taking possession of this vessel, and sending her in for adjudication, if it ever was the intention of the captors to consider her as prize. The plundered property was carried to the privateer, and instead of being preserved with a view to future inquiry, it was converted to the use of the spoliators; part of it at least, divided amongst them, and the rest concealed. After their arrival within the United States, instead of instituting proceedings for the purpose of condemning the property, a profound silence in relation to it was observed. These circumstances, if sufficiently made out in proof, are sufficient to establish a felonious intent. Le Brun and Whitford, supported by two other witnesses, all of them belonging to the privateer, confirm the testimony of the Portuguese captain and mate, as to the spoliation. All of them concur in describing a scene of lawless plunder, disgraceful to the national character of our country, and to that flag, which the gallantry of our naval officers and their crews has signalized, and caused to be respected. But, as to the identity of the prisoner, the evidence of the four witnesses belonging to the privateer, is directly opposed to that of the two Portuguese witnesses. They concur in stating that the prisoner first boarded the brig, and that his conduct, during the short time he remained on board of her, was unexceptionable;—that he forbade his men to take away with them the smallest article, threatening them with the most severe punishment, in case of disobedience;—that he returned to the privateer indisposed, and was either asleep, or appeared to be so, during the whole time that the robbery, by the order of Captain Butler, was committed. The Portuguese witnesses are positive, as to the identity of the prisoner. But without imputing to these much abused strangers, an intentional deviation from truth, it is possible they may very innocently have mistaken Hancock for the prisoner; as it appears that they strongly resemble each other, in the features of the face and in size. If, indeed, the prisoner's witnesses are believed, the mistake is apparent; because they prove the dress of Hancock to have been precisely that, by which the prisoner is described by the Portuguese witnesses; and that of the prisoner, to have been different in all respects. To you it belongs, to weigh conflicting evidence, and to judge of the credit of witnesses; and in doing this, you ought to throw into the prisoner's scale, the good character, which, previous to this affair, he is proved to have borne.

Should you incline to acquit the prisoner of any active participation in this robbery, he cannot be convicted upon the ground of his being a member of the society which committed the offense. If a number of persons associate to do an unlawful act, and proceed to its execution, it will be no excuse to one of them who was present, that he did not individually do the act—all are principals. But if the thing to be accomplished be lawful, as the visitation of this vessel was, and all but one of the party commit felony, though in the presence of that one, but without his participation; the crime of his companions is not imputable to him. You will now retire, and consider of this case.