### COMMONWEALTH *vs.* JOSEPH HOMER.

Suffolk.   January 15, 1920. — May 17, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Robbery. Evidence,* Of testimony before grand jury, To discredit witness, Relevancy and materiality. *Witness,* Before grand jury, Cross-examination. *Practice, Criminal,* Cross-examination of witness by district attorney, Argument of district attorney, Requests for instructions, Exceptions, Illegality of proceedings before grand jury. *District Attorney. Jury and Jurors. Constitutional Law. Pleading, Criminal,* Indictment.

At the trial of an indictment of a man for robbery of jewels, the complaining witness, a woman, testified in substance to intimate social relations with the defendant for months before the alleged robbery, that she came to be in fear of him because he abused her, that, finally, while in his room in a hotel in Boston, he by threatening her with a pistol compelled her to telephone to her hotel and direct her maid to bring the jewels to her, and that through threats he compelled her to take jewels from her ears and give them to him. This testimony was controverted by the defendant, and, in cross-examination, he sought to discredit the witness by showing that her testimony before the grand jury was different from that given by her at the trial in that therein no mention of a pistol was made by her. The evidence was excluded. *Held,* that the evidence should have been admitted.

An indictment charged that the defendant, a man, "did assault and beat" the complaining witness, a woman, "with intent to rob her and thereby did rob and steal from the person of said" witness one diamond collar, two diamond brooches, one pearl necklace, seven finger rings, two diamond studded watches and three other brooches. At the trial, there was evidence warranting findings that, by reason of fear of the defendant and by reason of violence inflicted upon her and the holding of a pistol in her face and the placing of his arm upon her shoulders, the complaining witness at his direction and command telephoned from his hotel to her own for her jewels, that they were delivered to him by her maid while she was in an adjoining bathroom and that she was compelled by the defendant to remove earrings from her ears and against her will to deliver them to him. *Held,* that there was sufficient evidence to support the indictment.

In order to prove the crime of robbery, it is not necessary to prove that the defendant took the property from the person of the owner; it is enough if, when the property was in the owner's protection and control, he was compelled to surrender it by violence and fear caused by the defendant.

As the indictment above described was tried, the question which the jury had to decide was, whether the jewels were taken from the owner by force and against her will, the defendant contending that they were delivered to him voluntarily by the owner as security for money which he had left with her. At the close of the evidence, the defendant asked for and the judge refused to give instructions based on an assumption that the defendant procured possession of the jewels in an honest belief that he had a right to do so to satisfy a debt due him. *Held*, that the requests rightly were refused because there was no evidence to which they were applicable.

In the indictment above described, the robbery was alleged to have been committed in May, 1917. In cross-examination of the defendant at the trial, the district attorney, subject to an exception by the defendant, was permitted to make several inquiries as to whether he filed or caused to be filed for him a petition in bankruptcy in 1913, to all of which he replied negatively. When the first question was put, the defendant asked if the record was to be offered, and the reply was that the "information will be forthcoming in due time." No record of any bankruptcy proceedings was offered at any time. This court, because another exception of the defendant was sustained, did not deem it essential to decide whether it was reversible error to admit the evidence, but *stated* that such a method of cross-examination was highly prejudicial to the defendant, and that, irrespective of whether the district attorney believed that a petition in bankruptcy had been filed, an unfair advantage was taken of the defendant in putting the questions.

One employed by the defendant as a secretary and bookkeeper was permitted, at the trial above described, subject to exceptions by the defendant, to be asked a series of questions as to whether, on sundry occasions, knowledge had come to her that "the authorities" were making an inquiry as to the defendant "selling dope." All answers were in the negative. Without determining whether the exceptions to the evidence should be sustained, this court *stated* that the method of cross-examination was highly improper and prejudicial to the defendant, being an attempt by unfair means to belittle him and render him unworthy of respect or credit.

If a district attorney, in his closing argument at the trial of an indictment, makes an untrue statement of law, the attention of the judge should be called thereto at once; and an exception to a refusal to grant a request, presented after the close of the argument, for an instruction that the statement was not a true statement of the law, must be overruled.

At the trial of the indictment above described, the complaining witness in cross-examination was asked what she did with money realized from pawning her jewels on an occasion previous to the alleged robbery, and answered that she used it to pay the debts of other people. The judge, subject to an exception by the defendant, permitted the district attorney to recall the witness and to ask her if, at the time the jewels were pawned, she had money of her own, and, also, if she was able to pay her debts and had used her money in paying the debts of others, and she answered affirmatively. *Held*, that the admission of the testimony was within the discretion of the judge.

At the trial of the indictment above described, it appeared that the defendant was a

dentist and had performed services as such for the complaining witness, and the defendant was permitted to show the value of that work. The defendant offered and the judge excluded evidence as to the reputation of the defendant as a dentist. *Held,* that the evidence was irrelevant and properly was excluded.

Testimony by affidavit by a former maid of the complaining witness at the trial above described having been admitted to show improper relations of that witness with the defendant, the witness was recalled by the district attorney and was permitted to be asked how the affiant came to leave her employ, and answered, "I discharged her," and the defendant excepted. *Held,* that, while the evidence properly might have been excluded, as the bias which one witness at a criminal trial feels toward another is not a material matter, under the circumstances of the statements in the affidavit, no reversible error was shown.

An objection to an indictment on the ground that unauthorized persons were present with the grand jury when they were hearing evidence relating to the charge made against the defendant, comes too late if it is presented for the first time after a general plea to the indictment, a trial and a verdict of guilty, by motions for leave to withdraw the plea and to file a plea in abatement and other pleadings adapted to raise the question of the legality of the indictment.

INDICTMENT, found and returned on July 5, 1917, charging that the defendant on May 12, 1917, "did assault and beat" Madge E. ·Wilbur, "with intent to rob her and thereby did rob and steal from the person of said Wilbur" one diamond collar, two diamond brooches, one pearl necklace, seven finger rings, two diamond studded watches, three other brooches, "of the property of said Wilbur."

In the Superior Court, the indictment was tried before *Lawton,* J. Material evidence and exceptions saved by the defendant are described in the opinion. The Leonie Foliere, whose affidavit is referred to in the opinion, testified that she was employed by Mrs. Wilbur as a maid from November 29, 1915, to April 7, 1917, and related in detail improper and immoral conduct on the part of Mrs. Wilbur toward the defendant and others.

The jury on June 27, 1918, found the defendant guilty. On February 25, 1919, after a motion for a new trial had been heard and denied and a bill of exceptions saved by the defendant at the trial had been filed, the defendant filed seven motions, all based on the contention that the indictment was illegal because unauthorized persons were present with the grand jury when they were hearing evidence relating to the charge against the defendant, the motions being, respectively, a motion that the verdict be set aside and that the defendant be allowed to withdraw his plea and to file a plea in abatement; a motion that the verdict be set aside,

and that the defendant "be allowed to withdraw his plea for the purpose of filing a motion to quash the indictment, a motion to amend the record, to set aside and dismiss the indictment, to file a demurrer, or to file any or all of said motions or pleas, or to avail himself of whatever remedy would have been open to him before his plea of not guilty;" a motion to amend the record; a motion to quash the indictment; a plea to the jurisdiction; a special plea and motion to dismiss, and a motion in arrest of judgment.

The judge found that unauthorized persons were present with the grand jury as alleged, ruled that the granting or denying of each motion was within his discretion, and denied each motion; and the defendant alleged exceptions.

The case was argued at the bar in January, 1920, before *Rugg,* C. J., *Braley, De Courcy, Carroll, & Jenney,* JJ., and afterwards was submitted on briefs to all the Justices.

*J. T. Hughes,* (*T. J. Kenny & E. J. Flynn* with him,) for the defendant.

*D. J. Gallagher,* Assistant District Attorney, for the Commonwealth.

CARROLL, J. The defendant was indicted for robbery of jewelry of the value of several thousand dollars from Madge E. Wilbur. There was evidence that the robbery took place in the defendant's room in the Hotel Touraine, Boston, on May 12, 1917. At this time Mrs. Wilbur was about fifty-nine years of age and the defendant was about thirty-six years of age. He was a dentist practising in Los Angeles, California, where they first met and where he did some dental work for her, the value of which was in dispute and for which he was not paid. There was much testimony concerning their relations during their stay in California. She admitted they danced together, visited several hotels and had been on automobile trips; and there was evidence which, if believed, tended to show that they had occupied the same room at different hotels. Certain jewelry, namely, a pearl necklace, a diamond collar and brooch, one locket and a watch, had been pledged by Mrs. Wilbur to secure a loan of $3,500. The defendant paid this account on or about April 18, 1917, and these jewels were delivered to him, Mrs. Wilbur giving him a note for $6,530, payable in six months with interest at six per cent. A receipt was made out to her, reciting that the note was given to secure a

loan of $3,780 in cash and "bill for professional services to the amount of $2,750.00."

In the spring of 1917, the defendant joined Mrs. Wilbur in Chicago, and they left on the same train for Boston, arriving on May 7. Before reaching the Back Bay station, he gave her a package containing $6,520 in cash and the jewels, and said, "take care of this for me." She placed the money and the jewel case in the care of the clerk at the Copley Plaza Hotel where she and her maid were guests. According to her testimony she returned the money to the defendant on the following day. This was denied by the defendant. He, however, admitted that the jewelry which had been pledged and which he placed in the care of Mrs. Wilbur was returned to him on the Wednesday following his arrival in Boston. Between May 7 and May 12 she drove with the defendant to Plymouth Rock, the North Shore, attended Keith's theatre and visited the Boston Public Library. She testified that on May 12 they met at the Copley Plaza Hotel about noon and went from there in a taxicab to the Hotel Touraine, where she accompanied him to his bedroom; that he then demanded her jewelry, referring to certain jewels which were then in her possession, saying, "I want your jewelry. I was a d —— fool for giving it up before. . . . This time I will not give it up;" that, standing before her, he produced a pistol, and told her he had the address of a relative of hers (meaning her brother) and had notified him she was ill in the hotel; that when her brother came he (the defendant) would tell him that she had come there of her own accord, that the brother would find her alone with him in his bedroom, and suggested, "what . . . [the] brother would think;" that the defendant further said that if her brother made any trouble, he would "give him this" (meaning the pistol which was then in sight) and "If that don't work, I have got another in my pocket in my closet;" that the jewels were then at the Copley Plaza Hotel and she requested him not to make her send for them, but after a considerable time "rather than not have him call . . . [her] brother" she said to the defendant "rather than have you do that, I will give you my jewels;" that she then went to the telephone and called the Copley Plaza Hotel; that the defendant, holding a pistol in his hand and his arm around her shoulder, said to her, "You be careful what you say, but say what I tell you to say;"

that she then wrote, at the dictation of the defendant, a note to her maid, enclosing an order to the cashier of the Copley Plaza Hotel, requesting the delivery of the package of jewels. She further testified that when telephoning the defendant held the pistol to her face; that he called a messenger and sent the note and order to her hotel; that, when the maid appeared at the Hotel Touraine, Mrs. Wilbur, at the defendant's orders, went into the bathroom, and while there the maid delivered to the defendant the package of jewels, consisting of seven rings, one watch, three pins, one lorgnette, three or four small pins and one earring, together with two small rings which had been taken from a drawer in Mrs. Wilbur's apartments at her direction; that when she came out of the bathroom she found the defendant with the jewels in his hands; that he gave her the lorgnette and "a small pin or two;" and made her take off her earrings and give them to him, and insisted that she write an order giving him permission to sell the jewels; that she protested, saying he had stolen them and she would have him arrested, to which he replied, "There is not one chance in a hundred that you will dare to have me arrested; you are too afraid of the notoriety and your reputation;" that she then wrote an order authorizing him to sell the jewels and use the money at his own discretion; that when the earrings were taken she asked him to let her go, but he refused, saying "I will take you home. I know what you will do if I let you out, you will have me arrested;" that about half past eleven that night the defendant went with her in a taxicab to the Copley Plaza Hotel and, on leaving her, said, "to be careful what she did or said;" and that he went to New York the same night, where he sold the jewels for $11,550.

The defendant's version was as follows: When the money and jewels were given Mrs. Wilbur on the train, it was understood that she was to return both the money and the jewels on the following day; that on May 12 they met at the Copley Plaza about eleven o'clock in the morning and went together to the Hotel Touraine; the defendant gave her the key of his room, telling her its location; in about ten minutes he went to the room and found her there; they remained there from eleven thirty in the morning until eleven at night; he at no time had a revolver; during the conversation she said she had not brought the money as she promised, because she wanted to use some of it, and offered

him her jewelry; he then left the hotel and was gone three quarters of an hour; on his return he agreed to accept the jewelry if she would give him a receipt for the money she received from him, and an order to sell the jewelry, to which agreement she assented. He denied that threats of any kind were made, or that he dictated the form of the order, or said anything about her brother. He further testified that in addition to Mrs. Wilbur's maid, three persons came to the room, that twice a waiter brought food, and a messenger boy called; that when the maid rapped at the door, he stepped into the hall, closing the door behind him.

1. The defendant, during the cross-examination of Mrs. Wilbur, sought to discredit her by showing that her evidence before the grand jury was different from that given at the trial and thereafter formal proof was offered of her testimony before the grand jury. This was objected to by the district attorney on the ground that there was no contradiction. The judge excluded the offered evidence. There were several details referred to in the offer, in which it was claimed her evidence was contradictory. Many of these statements were not in fact contradictory, some of them were on immaterial points, and some of the alleged contradictions, now relied on, were not specifically called to the attention of the judge. But, in one respect, at least, there was a direct contradiction concerning an important fact testified to by Mrs. Wilbur. If her evidence were believed, for months while she was in California, she was abused and threatened by the defendant and had lived in fear of him, and when they were together in the Hotel Touraine in Boston, by reason of fear and threatened violence, she gave the jewels to him. In her testimony she several times referred to the pistol which the defendant carried; that she was forced to go to the telephone while he held the pistol to her face, and that through fear she took the earrings from her ears and gave them to him. This was denied by the defendant. He claimed he came into the possession of the property with her consent and by reason of an arrangement by which she voluntarily surrendered them. In this state of the evidence the possession of a pistol by the defendant was a matter of importance. If he used such a weapon in the manner indicated, the jury might well believe the testimony of Mrs. Wilbur. If he had no such weapon, they might doubt her story and could find that the crime of robbery was not committed. If in

relating all the important facts connected with the crime before the grand jury, she said nothing about a pistol, except that the defendant intended to shoot her brother, and made no statement indicating that this weapon was exhibited in her presence, then the defendant had a right to show this contradiction and the jury could consider it as bearing upon an important and significant fact testified to by Mrs. Wilbur. The attention of the judge was called to this particular matter, and her evidence before the grand jury in contradiction of the testimony given by her at the trial, was admissible. *Commonwealth* v. *Mead,* 12 Gray, 167. See *Commonwealth* v. *Harris,* 231 Mass. 584, 586. This exception of the defendant's must be sustained.

2. There was sufficient evidence to support the indictment. The jury could find that through fear of the defendant and by reason of the violence inflicted upon her, she sent for the jewels and they were delivered by her maid while Mrs. Wilbur was in the bathroom; that she was compelled by the defendant to remove the earrings from her ears and against her will to deliver them to him; that he committed an assault and battery upon her by holding the pistol to her face and placing his arm upon her shoulders.

The defendant asked for several requests based on the fact that the jewels were delivered to the defendant by the maid while Mrs. Wilbur was in the bathroom, the defendant contending that because of this fact it could not be found that the property was taken from her person. There was abundant evidence that the earrings were taken from her ears and while in fear of the defendant delivered to him. As to the jewelry delivered by her maid, it was not necessary, in order to establish the crime of robbery, to prove that the property was taken from the person of the owner. It was enough if it was in her protection or control, and that by violence or putting in fear, she was compelled to surrender it. Moreover, there was evidence that after the jewels were delivered to the defendant, he brought them into the room and in the presence of the owner, selected such parts as he desired and permitted her to keep one or two articles. "A thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." Report of Penal Code of Mass. (1844), Robbery, par. 5. When the owner is

kept in one room of a house and is forced to tell where his property may be found in another room and the assailant goes there and takes the property, it has been held that such a taking is robbery. *State* v. *Calhoun,* 72 Iowa, 432. *Clement* v. *State,* 84 Ga. 660. There was no error, therefore, in refusing the defendant's requests that the Commonwealth had failed to prove the crime of robbery because there was no taking from the person. *Hill* v. *State,* 145 Ala. 58, 60. *Hill* v. *State,* 42 Neb. 503, 527. *O'Donnell* v. *People,* 224 Ill. 218, 225. *State* v. *McAllister,* 65 W. Va. 97, 104. *Turner* v. *State,* 1 Ohio St. 442. *Houston* v. *Commonwealth,* 87 Va. 257, 264. *United States* v. *Jones,* 3 Wash. C. C. 209, 216. *In re Ezeta,* 62 Fed. Rep. 964, 992. See *People* v. *Madas,* 201 N. Y. 349, 352.

3. The defendant requested the judge to rule, "if the defendant honestly believed that he had a legal right to take said jewelry then he must be acquitted," and "If the defendant procured the possession of jewels of Mrs. Wilbur's for the purpose of obtaining money with which to satisfy a debt which he believed to be legally due him and believed that he had a legal right so to obtain said property and so to apply said proceeds, then the defendant cannot be convicted of larceny." These requests were based on the contention of the defendant that inasmuch as the money given to Mrs. Wilbur by the defendant had not been returned and was still due him, he did not commit the crime of robbery if in order to secure the payment of this debt, by force and violence he carried away her personal property. As the case was tried, the question which the jury had to decide was whether the jewels were taken from the owner by force and against her will, the defendant contending that the jewels were delivered to him voluntarily by the owner as security for the money which he had left with her. These requests, therefore, were properly refused. Since there was no evidence to which the requests were applicable, it is unnecessary to consider whether they were sound. See *Commonwealth* v. *Burton,* 183 Mass. 461; *Commonwealth* v. *Peakes,* 231 Mass. 449, 457. The instruction given by the judge was sufficiently favorable to the defendant.

4. On cross-examination the defendant was asked if he had filed a petition in bankruptcy during 1913. To this he answered that he had not. He was also asked by the district attorney, "Did you at any time file a petition in bankruptcy?" to which he answered in the negative. And again, "Was there a petition filed

in your behalf by your direction by anybody at any time, a petition in bankruptcy?" To this question he replied, "Not that I know of," whereupon the district attorney inquired again, "Are you sure about that?" and the defendant said "Yes." All of this evidence was allowed against the defendant's exception. When the question was first put, the defendant's counsel asked if the record was to be offered and the reply was made that the "information will be forthcoming in due time." No record of any bankruptcy proceeding was at any time offered.

As the defendant's exceptions must be sustained for the reasons already stated, we do not deem it essential to decide whether it was reversible error to admit this evidence. It is proper to say, however, that we consider this method of cross-examination highly prejudicial to the defendant. If the district attorney knew that a petition in bankruptcy had not been filed, the suggestion of its filing implied in the question was an attempt by unfair means to discredit the accused, to unjustly prejudice the jury against him and to deprive him of his right to a fair and impartial trial. If the district attorney believed that a petition in bankruptcy proceedings had been filed, it was an attempt to establish an immaterial but harmful fact in an improper way. The accused was on trial for a most serious felony and he was entitled to a fair trial according to the settled rules of law. In either event, whether the defendant's bankruptcy was believed to be false or true, an unfair advantage was taken in putting the questions. See 3 Wigmore on Ev. § 908. *Gale* v. *People*, 26 Mich. 157, 161. *People* v. *Wells*, 100 Cal. 459, 462.

5. The defendant's secretary and bookkeeper was examined by the district attorney as follows: "Don't you know, Miss Montgomery, and didn't Mrs. Wilbur when you went out there to that hotel tell you, that the reason she sent for you was because the federal authorities were following her up to find out that Homer had been selling dope?" She replied in the negative, and although the defendant objected and excepted, the district attorney was again permitted to ask, "Didn't she [Mrs. Wilbur] say some authorities were investigating the sale of dope by Homer?" Answer: "No, sir." And after other questions bearing on this matter had been put and answered, the question was asked, "Did Mrs. Wilbur at any other time except those occasions about which

we are now talking, your visits after Homer had left, say anything to you about being inquired of as to Homer's selling dope?" to which she answered, "No, sir." Further inquiries were made bearing on this subject. The attention of the witness was then directed to a message referred to in a telegram sent to the defendant at Chicago, and she was asked, "Wasn't that message relating to the matter of the authorities being after Homer for selling dope?" This was objected to and the witness answered, "No, sir." There was no evidence whatever to support the intimations contained in these questions. What we have just said in discussing the previous exception applies with equal if not greater force to this question. It was an attempt by unfair means to belittle the prisoner and render him unworthy of respect or credit. We can conceive of no reason prompting these questions except the desire to discredit him. Even if the charge were true and the evidence was introduced to discredit the defendant as a witness by showing his conviction of a crime, this fact could be shown only by the record. See *Commonwealth* v. *Walsh,* 196 Mass. 369.

6. The robbery was alleged to have taken place on May 12. No complaint was made against the defendant until June 23, when a complaint was made in the Municipal Court of the City of Boston. This matter was the subject of comment by the defendant's attorney, and the district attorney said in his argument to the jury, in substance, that the defendant could not be extradited from New York on a mere complaint, that the "only basis of extradition is a grand jury indictment." The defendant asked the judge to instruct the jury that this statement of the district attorney was not the law. The request was refused. Even if we assume that this argument of the district attorney's was improper, the attention of the judge should have been called to it at once when the statement was made. It was not until the argument was finished that his attention was called to it. It was then too late. *Commonwealth* v. *Richmond,* 207 Mass. 240, 250. *London* v. *Bay State Street Railway,* 231 Mass. 480.

7. Mrs. Wilbur was recalled and was asked by the district attorney if, at the time the jewels were pawned, she had money of her own, to which she answered, "Yes." She then was asked if she was able to pay her debts and if she had used her money in paying the debts of others, to which she gave an affirmative reply,

to all of which the defendant excepted. The judge admitted the evidence, saying "in view of your cross-examination in regard to what was done with the money, and she said she used it to pay debts of other people with, that it is a proper subject for inquiry." We see no reversible error in this. It was within the discretion of the presiding judge to admit the evidence.

The evidence of the witness Good concerning the defendant's reputation as a dentist was properly excluded. The defendant was permitted to show the value of the work done by him for Mrs. Wilbur. His reputation was not important.

After the affidavit of one Leonie Foliere, formerly employed by Mrs. Wilbur, had been introduced in evidence by the defendant, Mrs. Wilbur was recalled and asked how the affiant came to leave her employment, and she answered "I discharged her," to which question and answer the defendant excepted. Considerable discretion must be left to the trial judge in deciding under what circumstances and to what extent the bias of a witness against the defendant in a criminal case, or the parties in a civil case can be shown. The evidence now under consideration could without error have been excluded, as the bias or feeling which one witness has for or against another witness is not a material matter; but in view of the peculiar statements in the affidavit, with some hesitation we come to the conclusion that there was no reversible error in admitting the evidence. See *Koplan* v. *Boston Gas Light Co.* 177 Mass. 15, 23.

8. After the verdict of guilty, the defendant filed several motions and pleas based on the fact that persons other than the witnesses testifying were present before the grand jury when the matter of the indictment was heard. *Commonwealth* v. *Harris,* 231 Mass. 584. The defendant had pleaded not guilty and after that plea was entered he was not, of right, entitled to retract and plead anew. It was too late for him, after the general plea of not guilty was entered, to question the validity of the indictment or the action of the grand jury. *Lebowitch, petitioner, ante,* 357. *Commonwealth* v. *Barronian, ante,* 364. There was no error in the manner in which the pleas and motions were dealt with by the presiding judge. *Commonwealth* v. *Tucker,* 189 Mass. 457, 463.

Except as pointed out, we discover no error in the conduct of the trial.

*Exceptions sustained.*