COMMONWEALTH vs. ROBERT A. BAILEY.

Hampshire. April 30, 1981. — June 16, 1981.

Present: HALE, C.J., GREANEY, & SMITH, JJ.

*Practice, Criminal,* Mistrial, Cross-examination, Argument by prosecutor. *Evidence,* Cross-examination, Leading question.

Where the Commonwealth was permitted, without objection by defense counsel, to pose a series of questions on cross-examination of the defendant in a criminal case, and defense counsel only objected to the questions and moved for a mistrial at a subsequent bench conference, the objection and request for a mistrial were not timely and this court declined to consider them on appeal. [105-107]

At a criminal trial, the judge's instructions to the jury removed any possibility of prejudice to the defendant which may have been created by the prosecutor's closing argument. [107-108]

INDICTMENTS found and returned in the Superior Court Department on April 17, 1980.

The cases were tried before *Moriarty, J.*

*William J. Leahy (Robert I. Warner* with him) for the defendant.

*Stephen R. Kaplan,* Assistant District Attorney (*Eileen M. O'Connor,* Assistant District Attorney, with him) for the Commonwealth.

SMITH, J. The defendant was convicted by a jury on an indictment for rape and on so much of an indictment for armed burglary that charged breaking and entering in the nighttime with intent to commit a felony and assault upon an occupant. The victim testified that during the early morning hours of February 17, 1980, while in her room she was forced by the defendant to submit to six acts of sexual intercourse. The defendant admitted in his testimony that the victim was a stranger to him but maintained that she consented to the acts. On appeal, the defendant alleges that

(1) the trial judge committed error in permitting the prosecuting attorney to ask a series of questions of the defendant in the course of cross-examination relative to his authorship of a certain letter sent from the jail to the district attorney's office; and (2) the prosecutor engaged in prejudicial final argument. We affirm the convictions.

1. *The "skinner" letter issue.* Prior to the defendant's taking the stand, the prosecutor had in her possession a letter sent to the district attorney's office, purportedly signed by the defendant and by individuals named Gosselin and Partridge, in which the signatories called themselves "skinners". Shortly after receiving the letter, the prosecutor showed the letter to defense counsel. On cross-examination, the defendant testified, without objection, that the expression "skinner" meant "rapist" and that he had heard the expression in jail. He denied that he was a "skinner" and further testified that he did not recognize the letter although he admitted that he knew Gosselin and Partridge.[1] Without objection, the defendant testified that he had known Gosselin and Partridge for about two or three months. At that juncture, the judge refused a request by the prosecutor to have the defendant write his name on the blackboard. At the bench, the prosecutor requested that the judge give her an opportunity to bring the other alleged signatories from the jail in order to have them testify. The judge granted the request, and defense counsel moved for a mistrial on the ground that the prosecutor had intentionally asked questions knowing that the answers would indicate that the defendant was in jail. The judge denied the request and shortly afterwards gave the instructions outlined

---

[1] The prosecutor asked the defendant at that point, "Isn't it fair to say that you sent this letter to the District Attorney's office, which indicated that you were a 'skinner,' and you signed the letter?" Defense counsel objected and the judge forbade the prosecutor to quote further from the letter. The judge further stated that he would give instructions to the jury relative to the meaning of negative answers to leading questions. The judge gave the instructions at a later point.

in the margin in regard to the role of negative answers to leading questions.[2]

The objection and the request for a mistrial were not timely. It is the rule in this Commonwealth that when something occurs during the course of a civil or criminal trial which constitutes the basis for one side to request a mistrial "it must be called to the attention of the judge immediately, or when the aggrieved party first learns of it, in order that the judge may take whatever action may be required in the circumstances." *Commonwealth* v. *DiPietro*, 373 Mass. 369, 387 (1977). *Commonwealth* v. *Homer*, 235 Mass. 526, 536 (1920). Defense counsel knew of the "skinner" letter prior to the cross-examination and an inference could have been drawn that the prosecutor would attempt to use the letter during cross-examination.[3] See *Commonwealth* v. *Spann*, 383 Mass. 142, 149 (1981) ("In the case before us, the inference was obvious that the prosecution would seek to prove that the ring was similar to one normally worn by the victim"). Appellate counsel argues that, by posing a series of questions to the defendant, the prosecutor conveyed to the jury the "innuendo" that the defendant had signed and mailed a letter to the prosecution describing himself as a "skinner," a jailhouse term for "rapist," and that these questions unduly prejudiced the defendant's right to a fair trial. This ground was never argued to the trial judge and need not be considered by us. See *Common-*

---

[2] "This is cross-examination, and, again, I think I've told the jury before, on cross-examination, ladies and gentlemen, questions that suggest an answer are permissible. But unless it's confirmed by the witness, it's absolutely no evidence at all of what was suggested. Testimony comes from the witnesses, not from counsel. You can believe what the witness says or not believe it. That's up to you. But unless the suggestion is confirmed, it is absolutely no evidence at all, and shouldn't even be considered." We note that the judge had previously given the same instruction.

[3] The fact that defense counsel knew of the letter presented a situation wherein a motion in limine would have been an appropriate device to raise the issue prior to the defendant's taking the stand. See *Commonwealth* v. *Lopez*, 383 Mass. 497, 500 n.2 (1981).

*wealth* v. *Johnson*, 374 Mass. 453, 458 (1978).[4] Because the objection to the "series" of questions was not timely we will not consider it. Furthermore, a substantial risk of a miscarriage of justice does not exist in this case. The prosecutor had in her possession a letter purportedly signed by the defendant. Therefore, there was a foundation for the questions. See *Commonwealth* v. *White*, 367 Mass. 280, 284 (1975) ("'the attempt to communicate impressions by innuendo through questions which are answered in the negative . . . when the questioner has no evidence to support the innuendo, is an improper tactic which has often been condemned by the courts'"). Appellate counsel admits in his brief that under the facts of this case the "skinner" letter, had the defendant admitted writing it, might have been received in evidence as an admission. Therefore, the questioning was permissible in that it "did not relate to extraneous or immaterial matters." *Commonwealth* v. *White*, 367 Mass. at 284-285.[5] In addition, the judge's reasonably prompt instructions were more than adequate in placing the role of the negative answers to leading questions in proper perspective.[6]

2. *Claim of error in prosecutor's argument.* At the close of the prosecutor's argument, defense counsel objected to

---

[4] The ground for the mistrial that was argued to the judge, i.e., that the purpose of the questions was to indicate to the jury that the defendant was in jail, was handled in the judge's charge, apparently to the defendant's satisfaction.

[5] Contrast *Commonwealth* v. *Homer*, 235 Mass. 526 (1920). In *Homer*, the defendant was accused of robbery and, on cross-examination, was asked if he had filed a petition in bankruptcy. The defendant answered in the negative. The court held that there was error because "it was an attempt to establish an immaterial but harmful fact in an improper way." *Id.* at 535.

[6] Appellate counsel also objects to the inclusion of the name "Appleby" in one of the prosecutor's questions. The prosecutor asked the defendant if he had heard the expression "skinner" from Appleby. The defendant answered, "Could be." There was no objection. We note that Appleby was convicted in Hamp*den* County, twenty-two months before this trial in Hamp*shire* County. See *Commonwealth* v. *Appleby*, 380 Mass. 296 (1980). It is doubtful that the jurors in this case ever heard of "Appleby".

Commonwealth v. Bailey.

the argument on two grounds: (1) the argument implied that the defendant had to prove "something"; and (2) the argument appealed to the emotions of the jury. The words to which the defendant objected came at the end of the argument and are stated in the margin.[7] After the defendant made known his objections, the judge immediately gave his charge to the jury. We note that at the beginning and near the close of his instructions the judge, using forceful words, stated that the defendant does not have to prove anything. Also the judge emphasized that "emotion" plays no part in reaching a verdict. We are satisfied that the judge's instructions removed any taint, if there was any, from the prosecutor's closing argument. We also note that the defendant, at the close of the judge's instructions, did not renew his objections, which indicates to us that his complaints had been corrected to his satisfaction. *Commonwealth* v. *Grammo,* 8 Mass. App. Ct. 447, 457 (1979).

*Judgments affirmed.*

---

[7] "And when you consider all this evidence, I'm going to ask you to consider what is reasonable. Does his story make any sense to you whatsoever, or does his story insult your intelligence? And I also ask you, when you go into the Jury Room to deliberate, are you going to come out and say to that Defendant, we don't believe your story, Mr. Defendant; your story is not believable? Or are you going to come out and say to Sarah, we don't believe you Sarah; we don't believe what you told us; and you're right, it's really hard to prove a rape charge. And we don't believe you on this one Sarah. You lied to us.

"Are you going to say that to Sarah? Is she going to go through all her testimony, all those times for naught? Did she go through all this testifying, all those occasions, so that you could tell her we don't believe you? I would suggest and I would submit that you will not do that, and that you will come back and find the Defendant guilty as charged."