CLEMENTS *et al. v.* THE STATE OF GEORGIA.

1. It is not necessary in a case of robbery to prove that the property was actually taken from the person of the owner, but it is sufficient if it is taken in his presence. Where the prosecutor was in his smoke-house within fifteen steps from his dwelling-house, all the property in the latter was in his immediate possession and control; and where he was prevented, by the threats and intimidation of the defendants, from leaving the smoke-house and returning to the dwelling-house, until some of them entered it and stole property therefrom, their offence was robbery.

2. The verdict was properly found upon the count of the indictment charging the robbery to have been committed by force, and was authorized by the evidence.

March 12, 1890.

Robbery. Criminal law. Charge of court. Verdict. Before Judge ATKINSON. Coffee superior court. April term, 1889.

Indictment for robbery, one count charging its commission by intimidation, the other by force. The jury found the defendants guilty on the latter count.

S. W. Hitch, by J. H. Lumpkin, for plaintiffs in error.

W. G. Brantley, solicitor-general, by D. W. Rountree and E. D. Graham, for the State.

Simmons, Justice.

1. William and Charles Clements were indicted, tried and convicted of robbery. They made a motion for a new trial upon several grounds, which was overruled by the court, and they excepted. The evidence as to the robbery was, in substance, as follows: Between seven and eight o'clock on the evening of January 19th, 1888, Bird went into his smoke-house to weigh out rations for his hands. While he was in there, a man ran up and said that the first one who put his head out, he would shoot it off; said that they were after a murderer that had killed four men in Dooly county, and were told he was there. Bird asked what was his name, and the man said he did not know but the sheriff did, and that the place was surrounded. Bird looked through the crack, the room being built of logs, and the man was standing with his face toward Bird, who could not tell anything about him only he was a stout man, and he stood in a shooting position. After a little while, the man disappeared, "kinder backed off," and Bird waited until he thought it was time for a man to come from anywhere around in fifty or sixty yards, and he did not come; and Bird said, "I am going out, if you do shoot," and went out. When he got to the back door, he met his wife coming in from the kitchen, and she asked him if he knew his chest was gone, and he told her no. Before that man came up, a gun was fired off. The chest was right

under the bed, which stood at the front door of Bird's dwelling-house. There was a piazza running along by the front door, and the chest had been taken out by that door. The smoke-house was "sorter back" of that house. The bed was from one and a half to two feet from the front piazza. The chest could have been seen under the bedstead. It was under the bed when Bird went to the smoke-house. It contained, before it was broken open, several hundred dollars in currency, land deeds and papers. He was alarmed or dazed by the statement made while he was in the smoke-house, by the man on the outside, who was standing within eight feet with his gun in a shooting position, so he could not put his head out. The smoke-house was about fifteen steps from the dwelling-house. Nobody said anything to him about taking his money, and nobody took anything from his person. The chest was not very heavy. It was about 18 inches long and about 14 inches high. It was generally known that he kept his valuables in that chest. There was other evidence tending to show that the plaintiffs in error were the guilty parties; but it is unnecessary to detail it here, as the main question is whether, under the facts set out, the offence was robbery.

Under the above stated facts, the court charged the jury as complained of in the 3d and 4th grounds of the motion for a new trial, which is alleged by the plaintiffs in error to be erroneous. These grounds are as follows: (3) Because the court erred in the following charge to the jury: "In order to convict these defendants, it must appear that the goods alleged to have been taken were taken from the person of the owner. By this you are not to understand that the goods must have been in the hands of, or attached to, the person of the owner. All his property, so far as cases of this character are concerned, is, in contemplation of law,

upon the person of the owner, which is, at the time of taking, in the immediate presence of the owner, or is so near at hand, or stored in such position, that, at the time of taking, it is under the immediate personal protection of the owner. If the goods are in that condition, then they are, within the contemplation of the law, upon the person of the owner." (4) Because the court gave the following charge: "That goods stored in the dwelling-house are deemed to be upon the person of the owner, in contemplation of law, so far as cases of this character are concerned, when the owner thereof is either personally therein, that is, in his dwelling-house, or in any house so nearly adjacent thereto as that the whole is under his immediate personal dominion and control. If you shall find from this evidence that in the county of Coffee, upon the day named in the indictment, the goods alleged to have been stolen were the property of Wiley Bird ; that they were of some value ; that they were stored in the dwelling-house of the owner; that the owner therof was present therein, or in a house so nearly adjacent thereto as that the same was under his immediate protection, dominion and control; that the defendants, acting in concert, intending by violence or intimidation to take and carry away the goods described in the indictment, and by threats of violence putting him in fear within the meaning of that term as the court has defined it to you, and by this means overcame his will; and that while under the influence of such fears the other entered the dwelling-house of the owner and took and carried away the goods described, with the intent to steal the same, then it would be your duty to convict them, even though it should appear that at the exact moment of taking the owner had no knowledge that his goods were being taken or of the purpose of the defendants in their putting him in fear." We do not think the court erred in giving

the charges complained of, under the facts of this case. It is not necessary in a case of robbery to prove that the property was actually taken from the person of the owner, but it is sufficient if it is taken in his presence. Crews and Crenshaw v. State, 3 Coldw. 350; State v. Jenkins, 36 Mo. 372; 2 Russell on Crimes, p. 106, 107; 2 Roscoe Crim. Ev. p. 935, 936. In the present case, Bird, the prosecutor, was in his smoke-house, within fifteen steps of the dwelling-house which contained the chest. All the property in this dwelling-house, in contemplation of law, was in his immediate possession and control. He was found by the defendants in this smoke-house, and was prevented by threats and intimidation from leaving the smoke-house and going into his dwelling-house. He was kept in the smoke-house a sufficient length of time to enable some of the defendants to enter the dwelling-house and take the chest therefrom. Suppose the defendants had found Bird on the front steps of his piazza and had carried him by force to this smoke-house and locked him therein, and had then gone back to his house and stolen his chest; could it be said that the taking was not in his presence? Suppose they had found him in his dining-room, and locking him therein, had gone to the front room and taken the chest; would not that have been in his presence? Suppose the owner of cattle is out in the pasture with them, when a man comes up and points a pistol at him, telling him to stay where he is. At the same time, confederates of the aggressor drive the cattle off from another part of the field. Would not that be a taking in the presence of the owner? See 2 East P. C. 707. In the case of State v. Calhoun, lately decided by the Supreme Court of Iowa, the accused went into the dwelling-house of a lady and into the room where she was, and by violence and intimidation, throwing her down and tying her, extorted information as to where

her valuables were. Being told that they were in another room, he left her tied and went into the other room, where he got her money and watch. This was held to be a taking in the presence of the owner, notwithstanding it occurred in a different part of the house from that in which the owner was tied. 72 Iowa, 432, s. c. 2 Am. St. Rep. 252. Bishop, in his work on Criminal Law, vol. 2, §1177, says: "The meaning of this legal phrase is, not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection that will suffice. Within this doctrine, the person may be deemed to protect all things belonging to the individual, within a distance, not easily defined, over which the influence of the personal presence extends." In the case of Merriman v. The Hundred of Chippenham, 2 East P. C. 709, it was held that, where a wagoner was forcibly stopped in the highway by a man under fraudulent pretence that his goods were unlawfully carried for want of a permit, and while they were going to a magistrate to obtain the permit, the man's confederates took away the goods, this was sufficient proof of a taking to constitute robbery. See also same case quoted in 3 Greenl. Ev. §228. So we think that where the prosecutor was within fifteen steps of the property stolen, and was kept away by threats and intimidation by one of the defendants, while the other stole the chest, the taking was in the presence of the prosecutor.

2. The verdict was found by the jury upon the proper count in the indictment, and the evidence authorized the finding.                    *Judgment affirmed.*