Where, in a hotel room, two men strike and beat another with their hands, strike him in the face with a blunt instrument, and then immediately take his money from the pocket of his trousers, which are hanging in a closet eight or ten feet away from the victim, such acts constitute robbery by force under the Code, § 26-2501.
(a) In such circumstances, the evidence contains the element of force contemplated by the statute. Long v. State, 12 Ga. 293
(9); Smith v. State, 117 Ga. 320 (43 S.E. 736, 97, Am. St. R. 165); Moran v. State, 125 Ga. 33
(53 S.E. 806); Bowen v. State, 16 Ga. App. 110 (84 S.E. 730); Rivers v. State, 46 Ga. App. 778 (5) (169 S.E. 260); Thomas v. State, 54 Ga. App. 747 (2) (189 S.E. 68).
(b) It is not necessary that the property be taken directly from one's person; it is sufficient if it be taken while in his possession and immediate *Page 764 
control. Clements v. State, 84 Ga. 660 (11 S.E. 505, 20 Am. St. R. 385); Crawford v. State, 90 Ga. 701 (2) (17 S.E. 628, 35 Am. St. R. 242); Grant v. State, 125 Ga. 259
(54 S.E. 191).
Judgment affirmed. All the Justicesconcur.
 No. 15489. JUNE 4, 1946.
The accused was tried for robbery by force, convicted with a recommendation to mercy, and sentenced to life imprisonment. His motion for new trial was based upon the general grounds only. He was jointly indicted with Douglas Vickery, but separately tried.
There was evidence that Richard Meads, the victim of the robbery, had employed a taxicab and was looking for a hotel room, and with the aid of the taxicab driver secured a room in an Atlanta hotel about 4 o'clock a. m., but instead of immediately going to the room he returned to the taxicab and there found the accused and Vickery, both of whom were strangers to him. The three got in the taxicab, drove off, secured food and drink, and all returned to the hotel in the same taxicab about 4:30 or 5 a. m. At the place where they secured food, the accused and Vickery had seen Meads' roll of money containing about $400. Upon returning to the hotel the accused went to the room with Meads. Vickery came to the room about 10 minutes later. Immediately upon arriving in the room, the accused took his clothes off and lay on the bed. Meads then undressed, hanging his trousers, in which his money was contained, in the closet. While preparing to take a drink Meads got close to the bed and the accused grabbed him. At this time the door opened and Vickery came in. The victim testified: "Both of them grabbed me. They struck me all around the armpits and around the stomach and back of the neck. They finally threw me on the bed. This one here (the accused) said get on that . . bed and cover your head with that sheet, which I did. The next thing I felt something else being pulled over my face. I couldn't detect what it was because my eyes were already covered with this white sheet, and I hollered for help. The minute I got the word `Help' out of my mouth three times, I had a blunt blow hit me on the upper part of my nose and under this right eye. That caused my eyes and nose to swell and caused my nose to bleed. While they were manhandling me, they wanted to know *Page 765 
where my damned money was. My money was in the closet with the door open. I imagine about six or eight feet . . from me. When they struck me across the face that caused sort of a dizziness, but I wasn't clear out of my mind. When I was in that condition I heard this man (the accused) and Vickery disputing about who was going to take most of the money. . . I did not see any woman in my room. . . I only heard a woman's voice. She just said, `Don't kill him.' She only said that once. . . I heard the woman's voice while my head was covered over, just after being struck."
It was further shown that a police officer, who had been notified, arrested the accused in the hall near the room and arrested Vickery as he was coming out of Meads' room. The accused had $87, and Vickery had $76 rolled up in his sleeve. While Meads testified that he had had $400 taken from him, no other money was found, though no search was made of the woman who had been in the room. At the time the officers arrived in the room, Meads was still on the bed with a sheet and pillow over his head, was bloody, eyes and nose beginning to swell, and was bleeding around the nose and mouth.
There was other evidence to account for why the police came upon the scene so quickly: the testimony of Vickery that he and the accused had a fight in the room about dividing the money, of details of drinking and visiting places prior to going to the hotel, and details of conduct and conversations in the room, though none of them are necessary to relate in connection with the rulings here made.