32414. WATTS v. THE STATE.

MARSHALL, Justice.

This case is an appeal from the Floyd Superior Court following the appellant's conviction in that court of two counts of kidnapping and one count of murder. The appellant received a life sentence for the murder

conviction and two concurrent ten-year sentences for the kidnapping convictions to run consecutively to the life sentence.

The evidence introduced at trial authorized the jury in finding that the appellant shot and killed Richard Garcia during an argument at the home of Inez Sutherland. The appellant argued at trial that he had shot the deceased in self-defense. He contended that, at the time he shot the deceased, the deceased was moving toward him making threatening motions with a knife. Miss Sutherland, the only witness to the shooting, testified otherwise.

However, it is undisputed that, sometime before the actual shooting occurred, the appellant had brandished a gun and threatened to kill the deceased. The deceased then displayed a knife and threatened to cut the appellant's guts out in the event the appellant shot him. The witness Sutherland testified that the deceased had closed the knife and put it on a table adjacent to the sofa where he was seated. She testified that the knife was lying there closed when the deceased was shot.

Shortly after the shooting, a Mr. Graham appeared on the scene. The appellant, who was later joined by his wife, abducted Sutherland and Graham at gunpoint. They drove the two of them across the state line to Alabama. The appellant and his wife took the kidnap victims to a wooded area and tied them to a tree with black tape.

The kidnap victims freed themselves and notified the police. The appellant and his wife were later found at a motel in Birmingham, Alabama. The weapon with which the deceased was shot was found in their luggage. Black tape was found in the wooded area where Sutherland and Graham said they had been tied up. *Held:*

1. The trial court did not err in denying the appellant's motions for directed verdict of acquittal and for a new trial on the general grounds.

There are various conflicts in the evidence as asserted by the appellant. These conflicts concern primarily whether the victim was seated at the time he was shot, and whether the victim's knife was found in an open or closed position after the shooting occurred.

After the jury has returned a verdict of guilty, and the defendant seeks a reversal of his conviction on appeal by arguing either that the trial court erred in failing to direct a verdict of acquittal or denying a motion for new trial on the general grounds, the only question presenting itself to the appellate court is whether there is any evidence to support the verdict. See *Bethay v. State,* 235 Ga. 371 (219 SE2d 743) (1975). It is the function of the jury, not the appellate court, to determine the credibility of witnesses and weigh any conflicts in the evidence accordingly. The appellate court views the evidence in a light most favorable to the jury's verdict after it has been rendered. See *Ridley v. State,* 236 Ga. 147 (223 SE2d 131) (1976).

The evidence introduced at trial authorized the jury in finding the appellant guilty of the offenses charged. We cannot say that the trial court erred in overruling his motions on the general grounds.

2. The appellant alleges prejudicial error in the prosecution's failure to disclose, pursuant to the appellant's Brady motion: (1) prior statements of witnesses Sutherland and Graham, and (2) that the state's key witnesses, Inez Sutherland and Walter Graham, had been arrested, booked and detained in the Rome city jail as suspects in the investigation of the murder of the deceased.

The appellant filed a motion for discovery in the nature of a Brady motion, requesting certain specific items of tangible evidence and various statements of witnesses. The appellant alleged in his motion that this information would be exculpatory in that it would support his defense of self-defense. Among the information requested was a pre-trial statement of Inez Sutherland, which the appellant alleged was inconsistent with her testimony at a preliminary hearing. The appellant also requested the disclosure of any and all other information which might tend to exculpate him either through the indication of his innocence or through the potential impeachment of any state's witness.

The trial court agreed to conduct an in-camera inspection of the prosecutor's files. Afterward, an order was entered, stating that nothing of an exculpatory

nature or helpful to the defense appeared therein. The appellant's motion was accordingly denied.

As to the pre-trial statements of witnesses Graham and Sutherland, the trial court found that nothing contained in those statements would tend to exculpate the appellant. On appeal, the appellant does not show or intimate how this finding of the trial court is erroneous. Therefore, we find the first asserted ground in this enumeration of error to be without merit.

As to the prosecution's failure to disclose that the state's two key witnesses had previously been arrested as suspects in this murder, we find that under the circumstances present here any error resulting from the nondisclosure of this evidence is harmless. The fact that witnesses Sutherland and Graham were previously arrested as suspects in this murder case was ultimately revealed to the jury during the defense's cross examination of a member of the Rome police force. Therefore, the prosecution's failure to divulge this information, even if in violation of its duty of candor toward the defendant, was not prejudicial. See *Hicks v. State,* 232 Ga. 393 (207 SE2d 30) (1974).

3. The appellant complains of the trial court's failure to grant his motion for a mistrial, or in the alternative to give the jury cautionary instructions to disregard the following testimony of witness Sutherland concerning the events leading up to the shooting:

"Q. And [the deceased] wanted to drink the beer? A. Let's drink a beer and then we will leave. Q. And [the appellant] said, 'Let's go now.' A. No. [The appellant] said, 'I want to talk about the deal. You promised me a deal.' and said, 'that is what I want to talk about.' He said, 'You have lied to me.' Q. Said, you have lied to me? A. And said, 'I'll kill you for lying to me,' said, *'It is not the first time I have killed.'* Q. I see. A. *He also said he had been in prison before."*

The preceding testimony was elicited from the witness during cross examination by the defense counsel. The defense counsel moved for a mistrial, arguing that the witness' later statement was not responsive to his question and impermissibly placed the defendant's character in issue. The district attorney argued that the

testimony of the witness was responsive to the defense counsel's interrogation of her, but the district attorney did submit that the court should promptly instruct the jury to disregard any statements by the witness concerning past activity of the defendant. To this the defense counsel responded, in effect, that he did not want a cautionary instruction given to the jury, stating that it could not possibly undo the harm that had been done by the witness' testimony.

A party cannot state to the trial court that he does not want the lesser ameliorative remedy of cautionary instructions to the jury rather than declaration of a mistrial and then, after the trial court refuses to grant a mistrial, complain on appeal that the cautionary instructions were not given. Thus, the only question presenting itself for decision is whether the trial court erred in refusing to grant a mistrial.

The trial court ruled that these statements allegedly made by the defendant were part of threats made to the deceased shortly before he was shot, and, therefore, were admissible as part of the res gestae. Accordingly, the trial court overruled the defendant's motion for a mistrial.

We agree with this ruling of the trial court. Threats to kill the deceased made by a defendant shortly before the homicide are admissible as part of the res gestae (see *Price v. State,* 166 Ga. 120 (142 SE 666) (1928); *Cason v. State,* 148 Ga. 477 (1) (97 SE 74) (1918); *Helms v. State,* 138 Ga. 826 (1) (76 SE 353) (1912)), and are not rendered inadmissible by virtue of the fact that they incidentally show commission of an independent crime. See *Davis v. State,* 230 Ga. 902 (2) (199 SE2d 779) (1973).

In the final ground upon which it is argued that the appellant's convictions must be reversed, he contends that the trial court erred in failing to disqualify Mrs. Richard Garcia, the wife of the deceased, as a witness for the state in view of her violation of the sequestration rule during the course of the trial.

At the commencement of the second day of the trial, the defense counsel made a motion to disqualify Mrs. Garcia as a witness or to admonish her and to have certain spectators at trial either held in contempt or barred from the courtroom.

A witness was called, who testified that three gentlemen (later identified as Mrs. Garcia's father-in-law and brothers-in-law) approached Mrs. Garcia in the hallway outside the courtroom after court had adjourned on the first day of trial. They began talking to her and making statements such as, "Well, here's what they are saying"; "Now here's the way they are telling it"; and "Well, if he hadn't been standing up." It appears that Mrs. Garcia was informed that the appellant was pursuing a defense of self-defense against the murder charge for which he was on trial. She was also told that one of the state's medical witnesses had testified that the angle at which the bullet had entered the deceased's body would indicate that he was standing up when he was shot.

The trial court instructed Mrs. Garcia not to discuss with witnesses or anyone in the courtroom what took place during the trial under penalty of being found in contempt of court, including disqualificaton of her testimony. However, the trial court, being uncertain as to whether Mrs. Garcia had merely overheard the conversation or actually participated in it and being also uncertain as to whether an infraction of the "rule" is made out when a witness discusses the case with a person present in the courtroom who has not been called as a witness, found that evidence of witness Garcia's violation of the rule was too weak to warrant disqualifying her as a witness. The trial court denied the appellant's motion.

In arguing that the prior ruling of the trial court constitutes reversible error, the appellant places major reliance on *Rozier v. State,* 124 Ga. App. 481, 482 (184 SE2d 203) (1971), which contains a statement to the effect that a failure to observe the rule of sequestration where invoked is absolute ground for a new trial. *Rozier* does not, however, hold that; and that is clearly not the law. Consistent with the law on this subject, *Rozier* can be interpreted to mean that certain violations of the "rule" are so egregious that permitting the witnesses involved in the violation to testify, over objections of the opposing party, necessitates a new trial.

The statute on the rule of sequestration provides that, "In all cases either party shall have the right to have the witnesses of the other party examined out of the

hearing of each other. The court shall take proper care to effect this object as far as practicable and convenient, but no mere irregularity shall exclude the witness." Code § 38-1703.

The trial judge is vested with broad discretionary powers in administering the rule of sequestration, which will not be controlled unless manifestly abused. See *Pearly v. State,* 235 Ga. 276 (219 SE2d 404) (1975). Disobedience of a sequestration order may subject the offender to punishment for contempt or may affect his credit, but does not render the witness incompetent to testify, or disqualify his testimony. See *McFarland v. State,* 137 Ga. App. 354 (223 SE2d 739) (1976); *Baker v. State,* 131 Ga. App. 48 (2) (205 SE2d 79) (1974). Thus, the violation of a sequestration order does not alone disqualify the witness, and the decision as to whether or not the witness should be disqualified rests in the sound discretion of the trial court. Assuming that there was a violation of the sequestration order, we find no abuse of that discretion in this case. The testimony given by witness Garcia concerned the events prior to the shooting, which were not in material dispute. The evidence received at the first day of trial, some of which was apparently revealed to the witness, concerned the events of the shooting itself. We do not think that the revelation of the earlier evidence to the witness mandated the exclusion of her subsequent testimony. The trial court did not err in refusing to exclude it.

*Judgment affirmed. All the Justices concur.*

ARGUED JUNE 14, 1977 — DECIDED SEPTEMBER 27, 1977.

*Brantley & Loggins, Samuel J. Brantley,* for appellant.

*Larry Salmon, District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Jr., Assistant Attorney General,* for appellee.