### 35107. COBB v. THE STATE.

MARSHALL, Justice.

This is the direct appeal of Anthony Jerome Cobb from his conviction in Turner County Superior Court of the armed robbery and murder of Harvey M. Downing and his sentences of life and death, respectively.

## I. *Summary of the Evidence*

The state presented evidence from which the jury was entitled to find the following:

On November 22, 1976, at approximately 11:45 p.m., a carload of black males drove up to the Ashburn Motor Inn in a dark, late-model car. One of the men came in and filled out a registration card. The night clerk, Harvey Downing, asked him to write down his car's license tag number, which he did after returning to the car to check the number. At that point, the man pulled a gun on Downing, demanded cash, shot him in the left eye, and took approximately $317 from the motel's cash drawer. Based on the information on the registration slip and from Downing's statement, deputy sheriff Nutt radioed a lookout for a dark, late-model car, Georgia license tag No. TEN 836, containing two black males. He then took Downing to the hospital, where he subsequently died.

Ocilla, Georgia, police officers, alerted by Nutt's radio call, stopped an older model, green Plymouth, bearing Georgia license tag No. HEN 683, driven by Harold Dean Sneed, the appellant's co-defendant. The officers, recognizing Sneed as a local resident, let him go. Neither of them recognized his black, male passenger.

A GBI special agent observed at the scene of the crime a motel registration card; a room key; a pair of men's glasses with the left lens missing, lying on the registration desk; bloodstains and lens particles on the floor and desk; and the open cash drawer, empty of bills. An autopsy of the decedent revealed that he had been in good health for his age (72 years), and that death was caused by a bullet in his brain which had entered between his left eye and his nose. After being advised of his rights, the appellant executed, on December 2, a handwriting sample, which the state crime lab identified as the same as the handwriting on the motel registration card.

The appellant, meanwhile, left Georgia. On December 10, deputy sheriffs in Volusia County, Florida, acting on a radio lookout, in connection with a Florida robbery, for two black males wearing brown leather jackets driving a greenish 1970 or 1971 Buick, stopped a car matching this description. The car contained a .22 caliber revolver, two brown leather jackets, a knit cap with $400

cash in it, and, among others, the appellant and co-defendant Sneed, who were arrested.

The appellant was read his rights five times, after which he made a full confession of the robbery and homicide. State crime lab tests showed that the bullet which killed Downing was fired from the pistol seized from the appellant. No evidence was introduced in the appellant's behalf at the trial.

## II. *Enumerations of Error*

1. The trial court did not err in overruling the appellant's motion to dismiss for an alleged violation of the Interstate Agreement on Detainers, Code Ann. Ch. 77-5B (Ga. L. 1972, p. 938 et seq.), in that his trial did not begin until a year after the State of Georgia first took custody of him. The court was authorized to find that the 120-day time limit of Code Ann. § 77-505b (c) was tolled by the delay occasioned by the appellant's numerous pretrial motions, including challenges of three separate indictments, in the face of the state's good-faith efforts to expedite the trial. See *Reaves v. State,* 242 Ga. 542, 552 (7a) (250 SE2d 376) (1978) and cit. Enumerated error 1 is without merit.

2. Enumerated errors 2 and 3 are the overruling of the appellant's challenges to the arrays of the grand and traverse juries. We affirm as to both.

(a) The appellant contends that persons 65 years of age or older are no longer exempt from jury duty, hence were improperly not included in the jury lists unless they had specifically requested to be included.

Code Ann. § 59-112 (a) (6) (Ga. L. 1967, p. 725) provided as follows: "The following persons are exempt from all jury duty, civil or criminal; the name of any such person shall not be included or continued in the jury box unless such person shall make a request therefor in writing to the board of jury commissioners or its clerk: . . . 6. Persons who are sixty-five (65) years of age or older." Ga. L. 1978, pp. 221, 222, repealed paragraph 6 of subsection (a) and added subsection (e): "Any person who is 65 years of age or older who does desire to serve upon juries shall notify the jury commissioners of the county in which such person resides in writing to that effect, and thereupon the jury commissioners shall place the name of

such person in the jury box for said county." Whatever the reason for such amendment may have been, it is apparent that the result is the same as previously, viz., that the exemption is still in effect and that it is not permissible to place persons who are 65 years of age or older in jury boxes unless they shall make request therefor in writing to the jury commissioners of the county of their residence. See Op. Atty. Gen. U77-37 (1977). The record shows that the Turner County jury commissioners followed this procedure.

Moreover, the appellant cannot complain of any alleged underrepresentation of older citizens on Turner County juries, as age is not a recognized class for the purposes of grand and traverse jury representation. *Fouts v. State,* 240 Ga. 39, 41 (1B) (239 SE2d 366) (1977) and cits.

(b) The juries were drawn pursuant to the provisions of Code § 59-205 (grand jury) and Code § 59-702 (traverse jury), which do not have the requirements for the drawing to be "at the close of each term, in open court," contained in the alternative method of drawing jurors provided in Code § 59-203.

(c) The drawing of the grand jurors on December 13, at which time no superior court judge was present in Turner County, rather than on December 19, when the calendar had indicated they would be drawn, did not invalidate the drawing. The alternative method provided by Code § 59-205 may be used "[w]henever *from any cause* the judge shall fail to draw a grand jury . . ." (Emphasis supplied.) Once this method was instigated, the drawing had to be done "at least 20 days previous to the next ensuing term of the court," which in this instance was January 8.

(d) The absence of the "ordinary" (now probate judge) at the drawing of the grand jury and his failure to sign the minutes after the clerk had made the proper entry thereon, were mere irregularities, which will not vitiate the drawing, or render the jury drawn illegal. *Smith v. State,* 90 Ga. 133 (1) (158 SE 682) (1892). "Where the law is substantially complied with, and upright and intelligent men form the grand jury, . . .the courts should not set aside proceedings by such an inquest on mere

technicalities." *Roby v. State,* 74 Ga. 812 (2a) (1885). These conditions were met in the present case.

3. In the fourth enumeration of error, the indigent appellant alleges that the trial court erred in refusing to appoint or provide an independent psychiatrist or other qualified person to evaluate his mental capacity. The purpose of the requested evaluation was to provide a mitigating circumstance for sentencing purposes, based on the theory that he was a drug user and "thought" he was under the influence of THC when he committed the murder. The appellant's credibility and ability to remember details was rendered suspect, however, by his claim that he didn't remember the location or details of his previous trials. Moreover, he admitted understanding the pretrial proceedings in his case, which were somewhat complicated. In the absence of any special plea of insanity by the appellant, the request for a psychiatric examination lay within the discretion of the trial court, and no abuse of discretion warranting a reversal of the denial of the motion appears from the record. *Westbrook v. State,* 242 Ga. 151, 153 (1) (249 SE2d 524) (1978) and cits. This enumeration of error is without merit.

4. The fifth enumeration of error is the overruling of the appellant's motion to supress the evidence seized at the time of his arrest in Florida. It is contended that there was no probable cause for arrest, as the only real correspondence was that the radio report described blacks in a Buick, and the persons stopped were blacks in a Buick.

In Chambers v. Maroney, 399 U. S. 42 (90 SC 1975, 26 LE2d 419) (1970), the arresting officers had a description of an alleged robber's clothing and car. The officers stopped a car matching the description, containing similar occupants, and arrested them after more corroborating evidence was found in the car. The Supreme Court upheld the ensuing convictions in the face of a Fourth Amendment challenge. In the present case, the officers had probable cause to stop the vehicle. The traffic at that time of the night was light. Although the car stopped was a goldish colored 1969 Buick, rather than a 1970 or 1971 green Buick, there was evidence that the car appeared green under the lights of the interstate

highway, and that the body styles of the 1970 and 1971 Buicks were very similar to that of the 1969 model. Although the car contained three black males, rather than the two described in the radio report, the assumption could have been made that the third was the driver of the getaway car. Two matching leather jackets in plain view on the car's back seat corresponded with and corroborated the report that the robbers had been wearing such jackets during the robbery. This enumeration of error is without merit.

5. The trial judge did not abuse his discretion, as contended in enumerated errors 6, 7 and 8, in disallowing a voir dire question to the effect of whether a prospective juror would have any bias or prejudice against a young person accused of a crime if the evidence revealed that he was acting under the direction and control of a much older person, such as his uncle. By this question, the appellant was not merely trying to ascertain the existence of any potential bias on the part of the prospective jurors, which he had accomplished by asking whether they would be prejudiced against a young person accused of a crime, but was attempting to obtain a prejudgment of his case, which is impermissible. *Pinion v. State*, 225 Ga. 36 (4) (165 SE2d 708) (1969).

6. Regarding Enumerations 9, 10 and 11, the trial judge did not abuse his discretion in limiting voir dire examination as to two questions, to the effect of whether the prospective jurors would be reluctant to return a not guilty verdict or to vote against the death penalty if they had, or were the only juror who had, reasonable doubts about these matters. These were technical legal questions concerning the presumption of innocence. *Stack v. State*, 234 Ga. 19 (2) (214 SE2d 514) (1975) and cits.

7. In Enumerations 12, 13, 14 and 15, the appellant contends that three prospective jurors were erroneously held to be disqualified under the rule of Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968); Davis v. Georgia, 429 U. S. 122 (97 SC 399, 50 LE2d 339) (1976); and *Griggs v. State*, 241 Ga. 317 (245 SE2d 269) (1978).

Prospective juror Austin indicated that he would not vote for the death penalty in the case, regardless of the

facts of the case. Prospective juror Tukes said that he could not impose the death penalty unless he had been an eyewitness to the crime (which he had' not). Prospective juror Johns said that, even though she favored the death penalty in some circumstances, she herself could never impose capital punishment. The above responses fulfill the requirements set forth in Witherspoon and the other cases cited hereinabove. See *Corn v. State,* 240 Ga. 130 (1) (240 SE2d 694) (1977), cert. den. 436 U. S. 914 (98 SC 2255, 56 LE2d 415) (1978). *Griggs v. State,* 241 Ga. 317, supra, (6), where the prospective juror said that he conscientiously opposed the imposition of capital punishment "on certain kinds of evidence," is not applicable in this case.

8. Enumerations 16 and 17 complain of the admission in evidence of Deputy Sheriff Nutt's testimony as to the victim's statements as to the details of the crimes and partial identification of his assailant and the getaway car. This testimony was properly admitted, over the objection that it was hearsay, to explain the conduct and motives of the officers in being on the lookout for the car and of the arrest by them of the defendants when found in possession of the car. *Germany v. State,* 235 Ga. 836, 840 (2) (221 SE2d 817) (1976); *Phillips v. State,* 206 Ga. 418 (3) (57 SE2d 555)(1950).

9. Photographs of the victim's face, showing the fatal wound, and of a close-up view of the wound were relevant and material to show the manner in which the victim had been killed, and were properly admitted in evidence. *Davis v. State,* 242 Ga. 901 (4) (252 SE2d 443) (1979); *Stevens v. State,* 242 Ga. 34 (5) (247 SE2d 838) (1978). Enumerations of error 18 and 19 are without merit.

10. Enumerations 20, 21, 22 and 23 complain of the admission in evidence, over objection, of certain evidence and testimony relating to the stopping by the police in Ocilla, Georgia, of a car in which the appellant was supposedly, but allegedly not shown to have been, a passenger. This evidence was relevant to explain the details of the investigation which eventually resulted in the appellant's arrest and indictment, and to corroborate some of Deputy Sheriff Nutt's testimony and the appellant's confession, hence was properly admitted.

11. Enumerations 24, 25, 26, 27, 28 and 29 complain of the admission in evidence of a photograph of the motel counter showing the motel registration card, the original registration card itself, the appellant's handwriting exemplar, the bullet taken from the murder victim, the pistol taken from the appellant at the time of his arrest, and testimony as to the results of ballistics tests made on the pistol and the bullet. The above were items of evidence which are distinct and recognizable physical objects, which, unlike fungible articles, were admissible in evidence without the necessity for showing the chain of custody. *Hurt v. State,* 239 Ga. 665 (7) (238 SE2d 542) (1977); *Norwood v. State,* 238 Ga. 199 (2) (232 SE2d 70) (1977); *West v. State,* 146 Ga. App. 120 (3) (245 SE2d 478) (1978).

12. In Enumerations 30, 32 and 33, the appellant complains that the trial judge's failure to delete certain portions of his confession which allegedly indicated that he had participated in other crimes, put his character in evidence and prejudiced his case. Specifically, he complains of references to "the same car, the grey GTO," to a particular pistol, and to "this particular robbery." The failure to delete these references, even if it could be considered error, was harmless, in view of the overwhelming evidence in the record implicating the appellant in the robbery and murder.

13. Enumeration 31 contends that Special Agent Rakestraw's statement at the beginning of the tape of the appellant's confession, that "Anthony Cobb has been advised of his constitutional rights and wishes to make the following statement: . . ." — should have been deleted, since it contained a legal conclusion as well as a conclusory statement as to the appellant's state of mind. The appellant argues to the effect that, because Rakestraw did not know how many hours of sleep the appellant had had the night before, the confession must have been involuntary, despite the fact that the appellant had been informed of his rights on at least five separate occasions within the preceding 24 hours. This enumeration is meritless.

14. Enumerations 34 through 44, which attack the admission in evidence of the taped confession on the

ground discussed in Division 13, supra, are without merit. The tape cassettes and original transcripts made therefrom were properly identified and authenticated before their admission, and the appellant was adequately advised of his rights prior to the recording of his confession. The transcripts were merely aids used to facilitate the playing of the tape to the jury; the trial judge imposed sufficient safeguards to ensure that the transcripts were not used as independent evidence by the jury.

15. Enumeration 45 contends error in the overruling of the appellant's motions for a directed verdict of acquittal on the ground of an allegedly fatal variation between the allegation of Count 1 of the indictment, that the appellant had taken money "from the person of" the victim, and the proof that the money was taken from the motel cash drawer.

The statute (Code Ann. § 26-1902 (a); Ga. L. 1968, pp. 1249, 1298; 1969, p. 810; 1976, p. 1359) provides in part: "A person commits armed robbery when, with intent to commit theft, he takes property of another from *the person or the immediate presence of* another . . ." (Emphasis supplied.) In *Clements v. State,* 84 Ga. 660, 662 (11 SE 505) (1889), this court approved a charge holding that in a prosecution for robbery, "it must appear that the goods alleged to have been taken were taken from the person of the owner. By this you are not to understand that the goods must have been in the hands of, or attached to, the person of the owner. All his property, so far as cases of this character are concerned, is, in contemplation of law, upon the person of the owner, which is, at the time of taking, *in the immediate presence of the owner, or is so near at hand, or stored in such position, that, at the time of taking, it is under the immediate personal protection of the owner.* If the goods are in that condition, then they are, within the contemplation of the law, upon the person of the owner." (Emphasis supplied.) See also *Welch v. State,* 235 Ga. 243 (1) (219 SE2d 151) (1975); *Osborne v. State,* 200 Ga. 763 (b) (38 SE2d 558) (1946).

The fact that the statute specifies two alternative definitions of the place from which the property can be taken, does not make the proof of one of such places an

essential element in the offense, as long as one or the other is proved, since, as we have shown above, " from the person" is broad enough to encompass the other term. Rather, the juxtaposition of the two alternatives merely serves to emphasize the fact that the taking from the person is not to be given a restrictive construction. The appellant was not thereby jeopardized under our holdings exemplified by *DePalma v. State,* 225 Ga. 465 (3) (169 SE2d 801) (1969).

This enumerated error is without merit.

16. There was no violation of the sequestration rule, as contended in Enumeration 46, where witness police Lt. Henshaw drove to his home in Florida in the company of only one other witness (the others were never called as witnesses by the state), and where he testified that he had slept during the trip and had not discussed the case with anyone.

17. Enumerations 47, 48, 50 and 58 complain of the admission of testimony of police Lt. Henshaw in the presentencing phase of the trial, on the ground that he had not been listed on the notice of aggravating circumstances. His testimony was admitted for the purpose of identifying the appellant as the same person as that one named in the exemplified copies of prior Florida convictions introduced in aggravation, which purpose is allowable. *Coker v. State,* 234 Ga. 555, 570 (14) (216 SE2d 782) (1975). These enumerations are without merit.

18. The trial judge's request for a copy of the aggravating circumstances in front of the jury during the presentencing phase, was not a comment on the evidence, implying that he believed that there were aggravating circumstances, but was merely a request for the notice of aggravating circumstances previously filed by the state. Enumeration 49 is without merit.

19. Enumeration 52 asserts error in denying a motion for mistrial on the ground that Lt. Henshaw's testimony, not having been listed on the notice of aggravating circumstances, was elicited in order to put the defendant's character in evidence. This enumeration is without merit, because the testimony was admissible for reasons explained in Division 17, supra.

20. Enumerations 51, 53, 54, 55, 56 and 57 allege error in the admission in evidence, at the presentencing phase, of exemplified copies of the appellant's prior Florida convictions. For the reasons which follow, these enumerations are without merit.

(a) Service of the notice of aggravating circumstances upon the appellant on the day prior to trial, and prior to arraignment and jury selection, was timely under the provision of Code Ann. § 27-2503 (a) (Ga. L. 1974, pp. 352, 357), that "only such evidence in aggravation as the State has made known to the defendant *prior to his trial* shall be admissible." (Emphasis supplied.) Cf. *Queen v. State,* 131 Ga. App. 370 (4) (205 SE2d 921) (1974), construing the same provision in former Code Ann. § 27-2534 (Ga. L. 1970, pp. 949, 950; 1971, p. 902; 1973, pp. 159, 161, repealed by Ga. L. 1974, pp. 352, 355). In any event, the timeliness of the notice will not be a factor in the new sentence review granted in Division 28, infra.

(b) It is irrelevant when the prior convictions were committed, because the jury was entitled to consider the appellant's record as of the time of sentencing. *Stephens v. Hopper,* 241 Ga. 596, 603 (4) (247 SE2d 92) (1978).

(c) The prior convictions were sufficiently proved by certified copies of the convictions; although the indictments are sometimes relevant, they are not a prerequisite to the admissibility of the prior convictions. See *Coker v. State,* 234 Ga. 555, supra, (14).

(d) The certified copies of the prior convictions showed that they were of capital felonies. It is presumed, absent a contrary showing by the defendant, that the statutes on which the prior convictions were based were in effect at the time of the convictions.

21. Enumeration 59 complains of the denial of the appellant's motion for mistrial on the ground that, during the presentencing phase, Lt. Henshaw was permitted to testify as to the times and dates of the prior convictions, as related to him by the defendant, with no foundation allegedly having been laid for the voluntariness of the defendant's statement. It is true, as the appellant asserts, that this placed his character in evidence, but this is the

purpose of aggravating evidence. The defendant was advised of his rights every time he was questioned. Furthermore, the properly admitted copies of the convictions sufficiently proved the same facts. This enumeration is without merit.

22. Enumeration 60 complains that, after witness McElhaney had given testimony as to the defendant's good character as mitigation in the presentence hearing, the state was permitted in cross examination to ask him whether he had heard of some murder *charges* in Berrien County against the appellant. " 'Where a witness called by the defendant testifies to his good character from general reputation, it is allowable, on cross-examination, for the witness to testify to his having heard of specific instances of conduct tending to disprove the witness's estimate of the defendant's character.' [Cits.]" *Jones v. State,* 70 Ga. App. 431, 445 (14) (28 SE2d 373) (1943). Even if references to charges, rather than actual convictions, be considered questionable, there was sufficient documentary evidence of a number of other prior convictions to make the admission of this evidence harmless. Moreover, the witness somewhat nullified the effect of the question by his answer, that he had heard of the charges, but that his opinion (as to the appellant's good character) remained the same. This enumeration shows no harmful error.

23. Enumerations 62, 63 and 64 complain of the sustaining of objections to questions of and certain testimony by the wife of one Sneed (who was sought to be shown to have had an improper influence on the defendant) in the presentencing phase, viz., "Do you know what kind of drug he [Sneed] was taking?", "Have you ever seen [Sneed], your husband, give any drugs to [the defendant]?", and testimony that the defendant was "crazy about his wife." All of the above involved conclusions of the witness, which were properly excluded.

24. Enumeration 65 asserts as error the overruling of the appellant's motion for a directed verdict for a life sentence.

(a) The first alleged ground, that the evidence of prior capital felony convictions was improperly admitted, has been disposed of in preceding divisions of this opinion.

Moreover, the jury also found as an aggravating circumstance that the appellant had committed the murder while engaged in another capital felony, armed robbery.

(b) The second alleged ground is that the death penalty, as applied in this case, would constitute cruel and unusual punishment, because the appellant would have to serve his 50-year minimum sentence in the Florida penal system before the death sentence could be carried out, and he could not attempt to contest the legality of the Florida convictions without exposing himself to the possibility that, if he were successful, he would immediately be put to death. In effect, the appellant is arguing that this state must reduce a capital sentence which is authorized under its own laws merely because of the effects of another state's judicial processes, brought about by the operation of the Interstate Agreement of Detainers. Put another way, the appellant is complaining that he has, in effect, been given a 50-year stay of execution of his death sentence! This enumeration is without merit.

25. Enumeration 66 correctly points out that the trial judge submitted the issue of punishment on Count 1 of the indictment (armed robbery) to the jury, rather than decide the punishment for this noncapital felony himself, as provided in Code Ann. § 27-2503 (a), supra. Resentencing on this count is not required under the circumstances, however, where the trial judge treated the jury's sentence as a mere recommendation, and published his own sentence, coincidentally corresponding with the jury's recommendation. Moreover, no harm is shown by this error, inasmuch as the appellant is not precluded from seeking a review of his life sentence under Code Ann. § 27-2511.1 (a). *Birks v. State,* 237 Ga. 861, 864 (230 SE2d 294) (1976). This enumeration is without merit.

26. Enumeration 67, contending that the charge authorizing the jury to consider the prior record of convictions as an aggravating circumstance was erroneous, has been decided adversely to the appellant by our holding hereinabove, that the prior convictions were properly proved.

27. The trial judge did not err, as contended in

Enumeration 68, in charging the jury that they were authorized to consider as an aggravating circumstance that the offense of murder was committed while the offender was engaged in the commission of another capital felony, i.e., armed robbery. *Young v. Ricketts,* 242 Ga. 559 (3) (250 SE2d 404) (1978) and cits.

28. Enumeration 61 complains of the trial judge's disqualification of the defendant's witness, his wife, to testify in the presentence hearing because of her violation of the sequestration rule at the guilt-innocence phase of the trial.

"The trial judge is vested with broad discretionary powers in administering the rule of sequestration, which will not be controlled unless manifestly abused . . . [Cit.] Disobedience of a sequestration order may subject the offender to punishment for contempt or may affect his credit, but does not render the witness incompetent to testify, or disqualify his testimony. [Cits.]" *Watts v. State,* 239 Ga. 725, 731 (3) (238 SE2d 894) (1977); *Brooks v. State,* 227 Ga. 339 (2) (180 SE2d 721) (1971) and cits.

Most of the cases dealing with the qualification of witnesses who have violated the rule of sequestration involve their qualification to testify in the guilt-innocence phase of the trial. In each case, the trial judge, and the appellate court on review, looks to the particular situation to determine whether there would be harmful error in allowing the witness to testify. Thus, e.g., in *Watts v. State,* 239 Ga. 725, supra, p. 731, this court held that the revelation to the witness of earlier evidence concerning the events of the shooting itself did not mandate the exclusion of the witness' subsequent testimony concerning the events prior to the shooting, which were not in material dispute. Similarly, in *Brooks v. State,* 227 Ga. 339, supra, (2), the qualification to testify was upheld where the testimony related solely to the witness' transporting certain state's exhibits to the crime laboratory, returning them to the court, and identifying them, and "related in no way to the guilt or innocence of the defendant."

In the case sub judice, there was no evidence that the violation of the rule was wilful, and the testimony which the defendant's wife said she had heard (the arresting

officers and one of the crime laboratory witnesses) could hardly have been material to the punishment issue before the court at the time she was called as a witness. Although the appellant made no offer of proof as to what the specific testimony of the excluded witness would be, his counsel's statement in his place that her testimony would be entirely unrelated to the subject matter of the guilt phase of the trial can be construed to mean that she would testify as to the appellant's good character, as a mitigating circumstance.

In Lockett v. Ohio, 438 U. S. 586, 604 (98 SC 2954, 57 LE2d 973) (1978), a plurality of the court, faced with the questions of which facets of an offender or his offense are to be deemed "relevant" in capital sentencing or what degree of consideration of "relevant facets" is to be required, concluded "that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Of course, the Supreme Court in Lockett was considering an Ohio statute, which was found to have precluded the consideration of certain information. That opinion does indicate, however, the court's concern about the breadth of information available to the sentencer. In the present case, the jury, as the sentencer, was precluded from such a consideration, not by statute, but by the trial court's mechanical application of the procedural rule of sequestration.

In examining the Georgia sentencing statutes, the Supreme Court noted that "[t]he scope of the nonstatutory aggravating or mitigating circumstances is not delineated in the statute." Gregg v. Georgia, 428 U. S. 153, 164 (96 SC 2909, 49 LE2d 859) (1976). It further held that, "[i]f an experienced trial judge, who daily faces the difficult task of imposing sentences, has a vital need for accurate information about a defendant and the crime he committed in order to be able to impose a rational sentence in the typical criminal case, then accurate sentencing information is an indispensable prerequsite to

a reasoned determination of whether a defendant shall live or die by a jury of people who may never before have made a sentencing decision." Gregg, supra, p. 190. The court held, at p. 203: "The petitioner objects, finally, to the wide scope of evidence and argument allowed at presentence hearings. We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far-ranging argument. See, e. g., *Brown v. State,* 235 Ga. 644, 220 SE2d 922 (1975). So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. *We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision."* (Emphasis supplied.) "The conclusion is inescapable that the legislature meant to empower the jury to consider as mitigating anything they found to be mitigating, without limitation or definition. This is a constitutionally valid procedure." *Spivey v. State,* 241 Ga. 477, 479 (2) (246 SE2d 288) (1978).

Accordingly, weighing the potential mitigating influence of the witness' testimony against the minimal, if indeed existent, harm resulting from the violation of the rule, we conclude that the exclusion of the testimony in this case was an abuse of discretion. This is so even though some evidence introduced in the guilt-innocence phase could be found to be mitigatory and even though the defendant's wife's testimony might be somewhat cumulative of other mitigating evidence admitted, because of the unlimited and undefined nature of mitigating evidence. This is not to imply, however, that the judge, in his discretion and inherent power to control the progress of trials, cannot limit the introduction of an endless quantity of cumulative testimony for this purpose.

Therefore, the presentence proceeding was invalid, and the case must be returned to the trial court for a new trial on the question of sentence for the murder conviction under appropriate presentence proceedings.

The judgment of convictions and sentences is affirmed except the death sentence imposed. The case is remanded to the trial court for a new trial on the sentence

to be imposed for murder.

*Judgment affirmed in part; reversed in part, and remanded. All the Justices concur, except Nichols, C. J., Jordan and Bowles, JJ., who dissent from Division 28 and the reversal of the death sentence.*

ARGUED JULY 10, 1979 — DECIDED SEPTEMBER 26, 1979.

*Rogers & McCord, John D. McCord, III,* for appellant. *Thomas H. Pittman, District Attorney, Arthur K. Bolton, Attorney General,* for appellee.