## 67050. MONTGOMERY v. THE STATE.

BIRDSONG, Judge.
This combined appeal relates to two entirely separate crimes and convictions of the same criminal defendant. An antique business

was burglarized in May 1982, and the appellant Montgomery was connected thereto. He was arrested for that crime and incarcerated in pretrial confinement on September 14, 1982. While Montgomery was awaiting disposition of the charge of theft by taking, certain not clearly identified persons passed (from the ground to a third floor cell occupied by Montgomery in the Atlanta city jail) a heavy metal bar associated with a jack handle and a lengthy piece of rappelling rope, all apparently designed to assist Montgomery in making an escape from his jail cell. Montgomery was convicted of the theft by taking on January 17, 1983, and sentenced to ten years. On February 7, he was convicted of possession of tools for the commission of a crime (escape), and sentenced to serve five years consecutively to the ten years assessed for the theft by taking conviction. Montgomery now brings his appeal to both cases, assigning as the identical enumeration of error the insufficiency of the evidence to establish and support his guilt of those crimes. *Held:*

### A-61586 Theft by Taking

The evidence relevant to this charge, viewed in the light most supportive of the verdict of guilt, authorized the jury to conclude that about 5:30 a.m. on May 20, 1982, a police officer observed in the parking lot of an antique business a pickup truck with the headlights burning. Closer observation indicated that the motor was running and the doors to three storage trailers in the lot had been forcibly opened by destroying the locks thereon. In the back of the pickup truck were a number of crated stained glass windows, each of a value of several hundred dollars. A few similar windows were still stored in one of the opened trailers. Blood was observed on the seat and floor board of the pickup truck and smeared blood stains were found on the trailer beside the forcibly opened door. No one was observed at or near the scene. The police officer ascertained from a wallet found in the truck and from a fingerprint found on the inside of the pickup truck that one Beecher probably had been in the truck. The truck was registered to one who had sold the truck and who was not connected to this incident. At the initial finding of the truck at the scene, no stolen auto report had been filed thereon.

Later during the same morning, a stolen auto report was filed on the truck. Investigation disclosed that one Poss lived at the address given, as suspect, in the stolen auto report. Poss had purchased the truck from the registered owner. Poss was married to Montgomery's sister and both Poss and Montgomery lived, with their families, at the listed address. Next door to Poss lived Beecher. When the police sought to arrest Beecher and Poss for the burglary of the antique business, the police found Montgomery at home. He was found in

bed, fully clothed (except for shoes) and had dried blood and grease on his hands and clothes. Montgomery exhibited a skinned knuckle on one hand and a fairly deep cut on the other. The trailers which had been illegally entered had grease on them which apparently could have rubbed off on the hands or clothing of a person exposed to the grease.

Opposed to this purely circumstantial evidence, Montgomery offered evidence that he had been at home asleep (in his clothes) at the time the alleged theft occurred.

### A-64015 Possession of Criminal Tools

The evidence relative to this charge authorized the jury to find that Montgomery and two others were incarcerated in a cell on the third floor of the Atlanta city jail. A train switchman, at work at a location that commanded an unobstructed view of the city jail, observed two persons on the ground below the jail passing a metal object and what appeared to be clothing to a third floor cell by means of a rope. The switchman heard the clink of metal as the object was pulled up to the jail window. By its shape, he assumed the object was a shotgun or a rifle. The switchman reported his observations to a police officer in the jail parking lot across the street.

The jailer had earlier received an anonymous phone call that a jail break was to occur but no supportive facts were furnished or observed at the time of the call. When the switchman's observations were reported, the officer went to the ground area to attempt to apprehend the two persons assisting in the attempted break. No one was observed at that time but the officers heard metal-upon-metal noises coming from a cell on the third floor and observed a hand extending from the jail window.

When the jailers went to and entered the jail cell, they found the appellant Montgomery standing near the window. The screen had been pushed away and the bars bore fresh marks and some of the bars were bent. Of the three men in the cell, one was lying on a bunk, the other was sitting on a bunk, and Montgomery was the only prisoner standing near the window. The other two prisoners were not breathing hard nor were they sweaty. Montgomery, on the other hand, appeared to be "exhausted" and was sweating profusely. Because of the possibility that there was a weapon, the three prisoners were removed from the cell and strip searched, with negative results. Inside the cell, concealed under a blanket, was a metal bar related to a jack handle, and inside a mattress was found a length of rope.

One of the three prisoners in the cell testified that he observed Montgomery and the other prisoner tear strips from a mattress cover

and fashion a rope. Thereafter, Montgomery alone pulled a metal bar and a length of hemp rope up from the ground and into the cell. Thereafter, this witness closed his eyes (apparently out of fear) but heard metal hitting against metal. On at least one occasion while this beating noise was occurring, the witness saw Montgomery holding the metal bar and standing at the window whereas the other prisoner was seated on a bunk. In defense of this charge, Montgomery argues that the evidence does not exclude as a reasonable explanation that one of the other prisoners was the possessor of the criminal implements.

To set aside either of these convictions, it is not sufficient that the circumstantial evidence show that the acts charged might by bare possibility have been done by somebody else. *Hunter v. State,* 91 Ga. App. 136, 138 (85 SE2d 90). It must however exclude every reasonable hypothesis save the guilt of the accused, which primarily is a question for determination by the jury. *Workman v. State,* 137 Ga. App. 746 (1) (224 SE2d 757). It being the primary function of the jury to determine the credibility of witnesses and weigh any conflicts in the evidence, this court exercises its appropriate role by viewing the evidence in a light most favorable to the jury's verdict after it has been rendered. *Watts v. State,* 239 Ga. 725, 727 (1) (238 SE2d 894). Where, as here, the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict is unsupportable as a matter of law. *Harris v. State,* 236 Ga. 242, 245 (223 SE2d 643); *Pless v. State,* 142 Ga. App. 594 (236 SE2d 842). Such is not the case in either of the convictions here appealed. We are satisfied that any rational trier of fact could find beyond reasonable doubt the guilt of the accused in each case. *Baldwin v. State,* 153 Ga. App. 35, 37 (264 SE2d 528).

*Judgments affirmed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED OCTOBER 26, 1983.

*Frank B. Hester,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Margaret V. Lines, Carole E. Wall, Assistant District Attorneys,* for appellee.